Filed 7/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re G.B. et al., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br> v. <br> KAREN R., <br><br> Defendant and Appellant. | A140107, A140624 <br><br> (San Francisco County Super. Ct. Nos. JD12-3316, JD12-3316A) |

Without holding a hearing, the juvenile court denied two requests by appellant Karen R. (mother) to modify an order denying her services to reunify with her son and severely abused infant daughter.[1]  Later, and after holding a hearing, the court terminated mother's parental rights.  On appeal, mother challenges these three orders.  She argues that the juvenile court erred in not holding an evidentiary hearing on her modification requests because (1) it initially ordered a hearing on a form order, and (2) a prima facie case was alleged compelling a hearing.  She also argues that her parental rights were improperly terminated because her children would benefit from a continuing relationship with her.

---

[1] Mother's requests were made under Welfare and Institutions Code section 388.  All further statutory references are to the Welfare and Institutions Code.

1

We conclude that the failure to hold a hearing on mother's modification requests does not amount to reversible error. On the first request, the juvenile court did not abuse its discretion in finding that mother failed to allege a prima facie case. On the second request, any possible abuse of discretion was harmless because mother was given an opportunity to be heard, and the court made findings negating the appropriateness of reunification services. We also conclude that mother's parental rights were properly terminated because substantial evidence supports the juvenile court's finding that the potential benefit to the children from a continuing relationship with mother was outweighed by the benefits of adoption. Accordingly, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Respondent San Francisco Human Services Agency (Agency) initiated these proceedings in November 2012 after mother brought her then seven-month-old daughter S.B. to the hospital, where a medical examination revealed that the infant had 13 fractures in her left femur, shins, left thumb, and ribs. Mother and A.B. (father) denied abusing S.B. and offered various explanations for the injuries that were determined to be implausible, such as the possibility that their then three-and-a-half year old son G.B. accidentally hurt S.B. by falling on her.[2] An investigating social worker learned that maternal relatives thought father was "very controlling and possessive of mother" and

---

[2] We limit our discussion of father's role in the proceedings below because father did not appeal from the juvenile court's order terminating his parental rights, and he is not a party to this appeal. We note, however, that father continued to deny abusing the children, sometimes erratically and inappropriately. In October 2013, he left three emotional voice messages for a social worker in which he first accused mother of the abuse, and later retracted the accusation and stated that he was "just angry and intoxicated." Later yet, he denied having made the phone calls in the first place. And when terminating father's parental rights, the juvenile court ordered father removed from the courtroom because he was yelling, making menacing gestures, and "looking at the Court in a very threatening manner."

2

heard that G.B. may have been abused.  The children were removed from their parents'
care and placed together with a paternal great-aunt and great-uncle.

The Agency recommended that the parents be denied reunification services
because S.B.'s injuries were severe and likely sustained while S.B. was in their care.
Both parents nonetheless took the initiative to seek services on their own.  They received
therapy (both individual and couple's counseling) and took a parenting class, and mother
attended domestic-violence counseling and a domestic-violence support group.  A social
worker acknowledged that the parents had been "diligent in pursuing services and in
presenting themselves as concerned, cooperative and motivated parents."  They were not,
however, fully cooperative.  They refused to sign consent forms that would have allowed
their service providers to share more information with the social worker, and they
declined referrals for psychological evaluations.  And although mother seemed open to
her therapist's feedback, she did not acknowledge her daughter's physical injuries, and a
case manager reported "there definitely need[ed] to be more counseling sessions" for her
to understand domestic violence.

Following a combined jurisdiction-and-disposition hearing, the juvenile court
determined in May 2013 that S.B. suffered serious, nonaccidentally inflicted physical
harm by a parent (§ 300, subd. (a)), faced a substantial risk of harm (*id.*, subd. (b)), and
suffered severe physical abuse by a parent or the parent reasonably should have known
that she had suffered such abuse (*id.*, subd. (e)).  The court also found that G.B. was a
child described by section 300, subdivisions (a) and (b).  The court bypassed
reunification services for both parents under section 361.5, subdivision (b)(5), which
prohibits services in most cases involving severe abuse (§ 300, subd. (e)), because the
parents had "not held themselves accountable for the serious injuries suffered by" S.B.
Services were denied as to G.B. because of his status as the sibling of a severely abused

3

child.  (§ 361.5, subd. (b)(7).)  The court then scheduled a selection-and-implementation hearing under section 366.26, to be held on September 16, 2013.[3]

Visits between the parents and their children continued, but the Agency soon filed petitions under section 388 to cut them back, alleging that the parents had engaged in "sabotaging behavior."  In its brief supporting the petitions, the Agency claimed that the parents tried to bribe a relative to assume responsibility for S.B.'s injuries and falsely accused S.B.'s caretakers of the abuse.  The juvenile court reduced visits from twice a week to once a week and granted the Agency the discretion to temporarily stop them as appropriate.

Mother eventually changed her mind and agreed to undergo a psychological evaluation.  The psychologist's report, dated August 14, 2013, stated that mother had separated from father three weeks before the evaluation, had been diagnosed with "Adjustment Disorder with Depressed Mood" by a therapist, was devastated by the loss of her two children, and was beginning to accept and understand the domestic violence she experienced.  It stated that, given mother's "cognitive ability and her apparent lack of a psychological disorder along with her willingness to engage in treatment, that she would be amenable to opportunities for further treatment."

The report also pointed out, however, that mother continued to deny that either she or father hurt their children and insisted that her family's claims about father's violence toward the children were false.  According to the report, mother had a history of staying in an abusive relationship with father, possibly because she was afraid of being alone, and needed to learn to be comfortable with being on her own so that she would not put herself or her children at risk "for the sake of saving a relationship."  The report concluded that mother was " 'a work in progress' " and "still ha[d] more to learn regarding herself and her relationship" with father.

---

[3] Both parents sought extraordinary writ relief, which this court denied in a nonpublished opinion on August 23, 2013.  (*A.B. et al. v. Superior Court* (A138572).)

On August 27 (about three weeks before the selection-and-implementation hearing was to be held), mother filed a request under section 388 (the first section 388 petition) for a modification of the May 2013 order denying her reunification services.  Mother used the standard JV-180 form for the petition and attached the psychological evaluation.  She maintained that the evaluation showed that she did not have a psychological disorder and was amenable to treatment, and she alleged that she had separated from father, had begun individual therapy, and had enrolled in a class for parenting children who have experienced trauma.

Two days after mother filed the first section 388 petition, the juvenile court filed a standard JV-183 form court order.  On it, the court checked a box selecting an option stating that a hearing was ordered to consider the petition "because the best interest of the child may be promoted by [it]," and it set a hearing date of September 6, later continued to September 13 (three days before the scheduled selection-and-implementation hearing).

At the September 13 hearing, mother's counsel expressed her understanding that "we are on for a setting of [the first section 388 petition].  I understand there is going to be an objection so that the court would set it for a hearing now?"  Counsel for the Agency argued that mother had not met her burden of showing she was entitled to a hearing because she had failed sufficiently to demonstrate changed circumstances or that the petition was in the children's best interests.  Mother's counsel countered that mother's psychological evaluation showed a change in circumstance and remarked, in an apparent reference to the JV-183 form court order, that "the court has actually already signed off on that there is a prima facie case.  So I think—I know the court has already made that decision."  The court clarified that it had liberally construed the petition in order to give the parties an opportunity to argue whether there should be a hearing on the first section 388 petition, but that it had not necessarily concluded that mother had established a prima facie case entitling her to a full evidentiary hearing on the petition.

The court denied the petition without an evidentiary hearing.  It concluded that mother had failed to establish a prima facie case warranting a full hearing in light of the seriousness of S.B.'s abuse and because the children had been in a stable placement for

5

about a year, while mother was "still trying to learn what is domestic violence, how it has affected herself and the children." Mother timely appealed the denial of the first section 388 petition. (No. A140107.) Around this time, the selection-and-implementation hearing was continued to November 7.

On October 28, about six weeks after her first section 388 petition was denied, mother filed a second section 388 petition (the second section 388 petition) again requesting a modification of the May 2013 order denying her reunification services. This time, she alleged that she had "come to the realization that she is the victim of domestic violence and it is more likely than not that [father] abused her daughter." She attached a declaration to the petition attesting that she had been "a battered woman" for the previous eight years, and she had suffered "mental, emotional, verbal and physical abuse." She also reiterated that she had separated from father, and she stated that she was in the process of obtaining a restraining order against him. (Mother ultimately filed a restraining order with the juvenile court about a week later.) Mother acknowledged that she had stayed in an unhealthy relationship with father, had failed to remove her children from a risk of abuse, and had not protected her children. Although mother continued to deny that she abused her children or witnessed anyone else do so, she recognized that she "failed to protect and prevent [her daughter] from obtaining multiple fractures over her body by staying in a relationship that could have been the cause of her injuries." As for whether granting the petition would be in the children's best interests, mother alleged that the children were "closely bonded" to her and would "suffer trauma" if they were separated from her. Attached to the second section 388 petition were recent letters and certificates from various service providers stating that mother had made progress in individual therapy, learned about the effects of domestic violence, attended a four-week "Trauma psycho-education" class, and completed a parenting program.

In response to the second section 388 petition, the juvenile court again used the JV-183 standard form court order and selected the option indicating that the court was ordering a hearing "because the best interest of the child may be promoted by the request." But this time, written notes on the form specifically explained that the hearing

6

was to determine whether mother had made a sufficient prima facie showing warranting a full hearing, citing *In re A.M.* (2013) 217 Cal.App.4th 1067. The Agency and the minors opposed the petition.

At the start of the selection-and-implementation hearing on November 7, the juvenile court first invited argument on whether mother had made a prima facie case warranting a hearing on the second section 388 petition. After hearing argument, the court acknowledged that mother had made "baby steps to changed circumstances" by moving away from father and beginning to protect herself from domestic violence, such that "there are probably some changed circumstances." But the court concluded that mother had nonetheless failed to make a prima facie showing that the children's best interests would be advanced by granting reunification services. The court cited a letter from a family-resources center attached to the section 388 petition that characterized mother as "emotionally vulnerable," and the court "highly doubt[ed]" that providing reunification services to mother could prevent reabuse within 12 months as contemplated by the statute concerning severely abused children (§ 361.5, subd. (i)(5)). The court also noted that both children reportedly were doing "very well" in their current placement. The juvenile court denied mother a hearing on the second section 388 petition.

The court immediately proceeded to the selection-and-implementation hearing (§ 366.26). The Agency recommended that the parents' parental rights be terminated and that the children be placed for adoption. A child welfare worker testified that both children were adoptable. Although the paternal great-aunt and great-uncle, with whom the children remained placed and who previously had sought to adopt them, had decided not to pursue adoption because of concerns about parental interference, the Agency was assessing both the maternal and paternal grandmothers, who had expressed interest in adopting the children. The children both enjoyed "a very close relationship" with the maternal grandmother and visited with her often.

The welfare worker testified that, although visits between the parents and their children went well, both children looked to their great-aunt and great-uncle for nurturing and their daily needs, and they had a "very close bonded relationship" with them.

7

According to the welfare worker, terminating parental rights and allowing the children to be adopted were in both children's best interests because of the severity of S.B.'s injuries and the ongoing instability and dysfunction in the relationship between mother and father. The welfare worker testified that mother's separation from father was a "step in the right direction," but it did not "completely cure the situation." Mother's attorney was not prevented from cross-examining the worker about the topics she wished to explore, such as asking about mother's visits with the children and the significance of mother separating from father.

Mother testified that her children were always "really happy" to see her at supervised visits, and they engaged in activities that allowed them to bond. According to mother, her son, G.B., had "a lot of love" for her, and he approached her "in a way that he looks forward to me healing his emotional trauma because I sense a lot of emotional trauma." Mother also enjoyed a "very strong attachment" with S.B., who would grab mother's leg and cry if mother tried to move to a different part of the visitation room. Mother further testified that she would remain separated from father "forever." Mother was not prevented from testifying about any issues her attorney raised.

Both parents argued for the application of the beneficial-relationship exception to termination of parental rights. (§ 366.26, subd. (c)(1)(B)(i).) But the juvenile court found that the benefits of maintaining parental rights were outweighed by "the benefits from an adoption having the permanency and stability in a home environment where the safety and freedom from physical harm are assured." The court then terminated both mother's and father's parental rights and selected adoption as the children's permanent plan. Mother timely appealed (No. A140624), and this court granted her motion to consolidate her two appeals.

8

A. *The Denial of Mother's Section 388 Petitions Without an Evidentiary Hearing Was Not Reversible Error.*

1. The Governing Legal Principles and Standard of Review.

Under section 388, a parent may petition to change or set aside a prior order "upon grounds of change of circumstances or new evidence." (§ 388, subd. (a)(1); see also Cal. Rules of Court, rule 5.570(a).[4]) The juvenile court shall order a hearing where "it appears that the best interests of the child . . . may be promoted" by the new order. (§ 388, subd. (d).) Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 808.)

A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414.) It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. (Rule 5.570(d)(1); *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) While the petition must be liberally construed in favor of its sufficiency (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 806; rule 5.570(a)), the allegations must nonetheless describe specifically how the petition will advance the child's best interests. (*Anthony W.*, at p. 250; *Zachary G.*, at p. 806.)

When a juvenile court bypasses reunification services due to a finding that a child suffered "severe physical abuse" (§ 300, subd. (e)), the focus of the dependency proceedings turns to the child's need for permanence and stability instead of family reunification. (*In re A.M.*, *supra*, 217 Cal.App.4th at pp. 1074-1075.) Once severe abuse has been found, a court is "*prohibited* from granting reunification services 'unless it finds that, based on competent testimony, those services are likely to prevent reabuse . . . or

---

[4] All further rule references are to the California Rules of Court.

that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent.' " (*In re A.M.*, *supra*, 217 Cal.App.4th at pp. 1074-1075, quoting § 361.5, subd. (c).) Stated another way, in the "comparatively extreme situation[]" when a child is the victim of severe abuse, the legislative presumption is that services are not to be provided to the parent. (*In re A.M.*, at p. 1074.) When this presumption applies, the evidentiary burden is heightened at any hearing to consider a section 388 petition requesting reunification services. In such a case, a juvenile court may modify an order denying reunification services only if there is clear and convincing evidence that the services would be in the child's best interests, and only if it makes the same findings that would have been required to offer services at the disposition hearing instead of bypassing services. (§§ 361.5, subd. (b)(5), 388, subd. (a)(2); rule 5.570(h)(1)(B); *In re A.M.*, at pp. 1075-1077.)

This court reviews a juvenile court's decision to deny a section 388 petition without a hearing for abuse of discretion. (*In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450.) With these legal standards and principles in mind, we turn to the merits of mother's claim that the juvenile court erred in denying her section 388 petitions without a hearing.

### 2. The Juvenile Court Did Not Abuse Its Discretion in Denying Mother a Hearing on the First Section 388 Petition.

Mother argues that the juvenile court improperly denied her an evidentiary hearing on her first section 388 petition for both procedural and substantive reasons. Her procedural argument is that the denial was improper because the court initially checked the box on the form order indicating that a hearing would be held "because the best interest of the child may be promoted by the request." Her substantive argument is that the petition's allegations sufficiently established a prima facie case requiring an evidentiary hearing. We find neither of these arguments to be persuasive.

We begin with the procedural argument. Mother is correct in pointing out that a juvenile court is compelled to order a hearing on a section 388 petition when it finds that the best interests of a child may be promoted by a change in the previous order. (§ 388,

10

subd. (d).)  But a contextual review of the record here shows that in checking the box on the form order indicating such a finding, the juvenile court was not deciding that a prima facie case had been made but was instead scheduling the matter for the parties to argue the issue—an option not included on the form.  When the court heard the parties' oral argument on whether an evidentiary hearing was required, it expressly clarified that it had liberally construed mother's petition "*in order to have an opportunity for the parties to argue for a hearing.*"  (Italics added.)[5]

Mother argues that *In re Lesly G.* (2008) 162 Cal.App.4th 904 (*Lesly G.*) controls, but we disagree.  In that case, the juvenile court used an ambiguous Judicial Council form (which has since been updated) to rule on a parent's entitlement to a hearing on a section 388 petition requesting the resumption of previously terminated reunification services.  (*Lesly G.*, at pp. 909 & fn. 8, 918.)  On the form, the juvenile court checked three internally inconsistent boxes:  one indicating a hearing would be held because the parent had established a prima facie case, one setting a date and time for the hearing, and one indicating a hearing would *not* be held.  (*Id.* at pp. 909, 918.)  The clerk also sent a notice to the parties informing them that a hearing had been set.  (*Id.* at pp. 909, 919.)  The court continued a scheduled selection-and-implementation hearing to review the section 388 petition, and it ordered the social-services agency to address the petition.  (*Lesly G.*, at p. 910.)  At the beginning of what was anticipated to be a combined section 388 hearing and a selection-and-implementation hearing, the juvenile court denied the section 388 petition, apparently without explanation.  (*Lesly G.*, at pp. 910-911.)  In a later written order, the juvenile court simply stated that the proposal to resume

_____

[5] Allowing mother to argue orally whether she had made a prima facie case benefitted her by giving her the opportunity to establish a record supporting her request for an evidentiary hearing.  (*In re Edward H.* (1996) 43 Cal.App.4th 584, 591 [statements at hearing confirmed that "no rational purpose would be served by an evidentiary hearing"]; see also Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2014 ed.) Supplemental and Subsequent Petitions, § 2.140[2], p. 2-468 [though not required, allowing argument before denial of evidentiary hearing under § 388 ensures juvenile court makes informed decision and establishes a good record].)

11

reunification services would not promote the children's best interests.  (*Id.* at p. 911 & fn. 12.)

In assessing this procedural history, *Lesly G.* concluded that the juvenile court's denial of the section 388 hearing violated the parent's due process rights because the form order had already ruled that the section 388 petition stated changed circumstances and might promote the children's best interests.  (*Lesly G.*, *supra*, 162 Cal.App.4th at p. 912.)  The social-service agency conceded on appeal that the ruling on the form order established that the juvenile court had not summarily denied the petition for lack of alleging a prima facie case.  (*Id.* at p. 913.)  Thus, the question facing the Court of Appeal was whether the juvenile court properly considered the section 388 petition without holding a hearing after it had already concluded that the parent had made a prima facie case for such a hearing.  (*Lesly G.*, at pp. 913-915.)

This is not the question before us.  Unlike the parties in *Lesly G.*, the parties here did not come to court expecting an evidentiary hearing; mother's counsel anticipated only that such a hearing would be *set*, and she understood that the Agency objected.  (Cf. *Lesly G.*, *supra*, 162 Cal.App.4th at p. 913 & fn. 14.)  And unlike the juvenile court in *Lesly G.*, the juvenile court here explained at the first opportunity that the form order was not intended to be a ruling that mother had made a prima facie case and was entitled to an evidentiary hearing.

But even if we were to construe the form as a ruling that mother had stated a prima facie case, we would reject mother's argument that it barred the juvenile court from changing its mind after considering the parties' oral argument.  *Lesly G., supra,* 162 Cal.App.4th 904 does not stand for the blanket proposition advanced by mother that a juvenile court is forever bound by a box it checks on a form order suggesting a certain finding.  A juvenile court has the authority to change, modify, or set aside a previous order sua sponte if it decides that a previous order was "erroneously, inadvertently or improvidently granted."  (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 116.)  Thus, even if the juvenile court here had determined when it checked the box that

12

mother's section 388 petition established a prima facie case, it retained the discretion to change that determination upon further consideration, and it did so. (§ 385.)

We next turn to mother's substantive argument that the juvenile court erred in ruling that the petition failed to establish a prima facie showing, and we conclude that it is similarly unpersuasive. In making her argument, mother points to the positive steps she alleged she had taken after her children were removed from her care. But even if these steps were found to be true at a hearing, they would not have established mother's right to reunification services. (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) Some of the alleged steps—such as mother's willingness to engage in services—were *already* known when the juvenile court denied reunification services in May 2013 and accordingly could not have constituted changed circumstances. And the additional steps mother alleged—separating from father and belatedly undergoing a psychological evaluation—while commendable, were not enough to have allowed the juvenile court to have made the necessary findings that services were likely to prevent reabuse or were in the children's best interests. The evaluation report upon which mother herself relied stated that mother continued to deny any parental role in S.B.'s serious injuries and was still " 'a work in progress.' " In light of this denial, mother's steps, even if proven, would not have rebutted the presumption against her receiving services. If mother had abused S.B., she was not owning up to it. If she had not abused S.B., she was not owning up to the role she played in allowing or ignoring father's abuse. Either way, the juvenile court would have been unable to make the necessary findings that services were likely to prevent reabuse or were in the children's best interests. Thus, the juvenile court did not abuse its discretion in declining to hold an evidentiary hearing on mother's first section 388 petition.

3. Any Error by the Juvenile Court in Denying Mother a Hearing on the Second Section 388 Petition Was Harmless.

We also find no reversible error in the juvenile court's decision not to hold a hearing on mother's second section 388 petition. Mother argues that a hearing was required because she sufficiently alleged changed circumstances and that reunification

13

services were in her children's best interests. But mother cannot show that she was prejudiced or that a remand is appropriate given all the evidence that the juvenile court heard at the contemporaneous selection-and-implementation hearing, and given the court's subsequent findings.

The second section 388 petition was filed about six weeks after the first section 388 petition was denied and on the eve of the selection-and-implementation hearing. Mother contends that she should have been given the opportunity to prove the strides she had taken to recognize the role of domestic violence in her life, the steps she had taken to protect herself and her children from father by moving away and filing a restraining order against him, and the trauma the children would suffer by severing their relationship with mother.

When the juvenile court denied mother an evidentiary hearing on the second section 388 petition it immediately proceeded to a contested hearing on selecting a permanent plan for the children. It then heard evidence and argument on whether it was in the children's best interests to select adoption as the permanent plan, or whether it would be detrimental to the children to select such a plan because they enjoyed a beneficial relationship with their parents that should not be ended by terminating parental rights (§ 366.26, subd. (c)(1)(B)(i)). The social worker testified that "[t]here is a lot of concern around the origins of the—still of the injuries that were sustained by S[.B]. [¶] There is also great concern around the instability and dysfunction of the relationship between the mother and the father in terms of ever-changing stories, pointing fingers at each other, saying things about each other, then backing out and saying that isn't true, and there is a lot of chaos. It is very chaotic. [¶] And in my professional opinion, I don't view that as being very emotionally healthy as well as physically because as I stated, there still hasn't been an adequate explanation for the nonaccidental injuries sustained by S[.B]." Mother was given the opportunity to testify about her positive relationship with her children and the reasons it would be beneficial to have a continuing relationship with them, and she testified she would remain separated from father "forever," which would benefit her children as well. She emphasized what she had learned about parenting,

14

asserting: "I will do everything to protect my children from re-abuse or any risk that can cause any type of abuse or damage to my children mentally, emotionally, and physically. [¶] And I will always abide by everything that I have learned, such as all of the parenting skills and ways that I have really came to really install (sic) inside of me so that I can really parent my children by myself and be able to provide them with all—all of their needs." Although mother did not testify about the specific documents that were attached to the second section 388 petition relating to her progress in gaining parenting skills and insight into domestic violence, she was not prevented from testifying about what she had learned.

At the conclusion of the hearing, the juvenile court acknowledged the hardship in separating children from their biological parents, but concluded that the evidence showed that the benefits from the parent-children relationship here were "certainly outweigh[ed]" by the benefits of adoption, which would ensure the children permanence and stability in a home free from violence. In our view, this finding (which is supported by substantial evidence, *post*, § II.B.) rendered harmless any failure to provide a hearing on the second section 388 petition because it negates the possibility that the court could have granted additional reunification services following an evidentiary hearing. (*In re Edward H.*, *supra*, 43 Cal.App.4th at p. 594 [denial of § 388 hearing did not prejudice parents because prospect of additional six months of reunification services would not have promoted stability for children and thus would not have promoted their best interests].) Mother argues that she "had no opportunity to present evidence, to defend and expand upon the merits of her section 388 petition, or to cross-examine witnesses." But she identifies no additional evidence that she would have presented, let alone how that additional evidence would have demonstrated that reunification services were in her children's best interests.

Relying on *Lesly G.*, *supra*, 162 Cal.App.4th 904, mother claims this court "cannot presume that a hearing would have been fruitless." To the extent that *Lesly G.* suggests that a reviewing court can never conclude it was harmless for a juvenile court to deny a section 388 hearing where a prima facie case was established, we decline to follow it. At

15

the beginning of the hearing at issue in *Lesly G.*, counsel for the social-services agency told the juvenile court she planned to enter documents relevant to both the permanency-planning hearing and a contested section 388 hearing and that she understood the evidence would be considered simultaneously. (*Lesly G.*, at pp. 910-911, 913, fn. 14.) Instead of holding a combined hearing, however, the juvenile court stated it had denied the section 388 petition. (*Lesly G.*, at p. 911.) As did the juvenile court here, the juvenile court in *Lesly G.* then proceeded to a contested selection-and-implementation hearing. (*Ibid.*) At the conclusion of this hearing, the juvenile court found that the parents had not progressed to the point where their children could be returned to them, had no significant parental roles in their children's lives, and had failed to demonstrate that the children would be harmed if parental rights were terminated. (*Id.* at pp. 911-912.) The Court of Appeal in *Lesly G.* reasoned that these findings were no substitute for a section 388 hearing because "the focus [of the proceedings at the selection-and-implementation hearing] changes from potential reunification to permanency," requiring the section 388 petition to be *heard* first. (*Lesly G.*, at p. 916.)

But at this stage of proceedings, the focus is always on a child's need for permanence and stability no matter what issues are being considered, and we disagree with *Lesly G.*'s suggestion to the contrary. Once reunification services are terminated (or, as in this case, never ordered in the first place), the focus of the proceedings changes from family reunification to the child's interest in permanence and stability. Our state Supreme Court has repeatedly recognized this principle. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [when hearing § 388 petition after termination of reunification services, court "must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child"]; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254 [at this point in proceedings, "the interests of the parent and child have diverged, and the child's interest must be given more weight"]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 308-310 [rebuttable presumption after termination of reunification services that continued care is in child's best interests].) And the principle was recently reiterated by Division Three of the Fourth District. (*In re J.C.* (2014) 226 Cal.App.4th 503, 527,

16

petn. for review pending, petn. filed July 1, 2014, S219659.)  The focus on the child's best interests remains in place *whether or not a parent seeks additional services under section 388.*  (*In re Edward H.*, *supra*, 43 Cal.App.4th at p. 594 [on eve of permanency-planning hearing, children's interest in stability is "court's foremost concern and outweigh[s] any interest in reunification"].)  This is why juvenile courts sometimes hold a combined section 388 hearing with the selection-and-implementation hearing in the interest of judicial economy, and it is why the evidence presented on the various issues to be decided may be "*substantially the same.*"[6]  (Seiser & Kumli, *supra*, Supplemental and Subsequent Petitions, § 2.140[3], p. 2-470, italics added.)  In concluding that the lower court's procedures violated due process, *Lesly G.* failed to recognize that the issues and relevant evidence often overlap at these two hearings.  (162 Cal.App.4th at p. 915.)

The similarity of issues and relevant evidence was discussed in *In re C.J.W.* (2007) 157 Cal.App.4th 1075, an opinion we find to be instructive.  The parents in *In re C.J.W.* filed section 388 petitions on the eve of a selection-and-implementation hearing to modify the denial of reunification services.  (*C.J.W.*, at p. 1079.)  Using the same ambiguous Juvenile Council order used in *Lesly G.*, the juvenile court checked conflicting boxes indicating that it both would and would not hold a hearing on the petitions.  (*C.J.W.*, at p. 1080; *Lesly G.*, *supra*, 162 Cal.App.4th at p. 914.)  At a hearing, the court first denied the section 388 petitions, then conducted the selection-and-implementation hearing, and then terminated parental rights.  (*C.J.W.*, at p. 1079.)  The juvenile court did not allow testimony from the parents on their section 388 petitions.  (*C.J.W.*, at p. 1080.)  On review, the parents complained their due process rights had been violated because "they were not allowed to cross-examine the social workers and present evidence."  (*Id.* at p. 1081.)  The appellate court disagreed, noting that the parents did not

---

[6] We acknowledge that a juvenile court must *decide* a section 388 petition first, because an order granting services would be inconsistent with selecting a child's permanent plan. (*In re Jeremy W.*, *supra*, 3 Cal.App.4th at p. 1416, fn. 14.)  But in virtually all cases, evidence presented on the two rulings will overlap.

17

identify what further evidence they wanted to present, and that "[t]he juvenile court's hearing, as conducted by the dependency court, comported with due process." (*Ibid.*)

Lesly G. found *In re C.J.W.* to be distinguishable because the juvenile court in *Lesly G.* "neither took testimony nor received documentary evidence, and it denied the [section 388] petition without affording counsel an opportunity to argue the merits of the petition." (*Lesly G.*, *supra*, 162 Cal.App.4th at p. 915.) But the evidence presented by the social-services agency at the selection-and-implementation hearing in *Lesly G.* was *also* relevant to the 388 petition, and there is no indication that this evidence was excluded or ignored by the juvenile court in terminating parental rights. (*Lesly G.*, at pp. 910-911.) We agree with *In re C.J.W.* that when at a selection-and-implementation hearing there was "no showing whatsoever of how the best interests of [the children] would be served by depriving them of a permanent, stable home in exchange for an uncertain future," it is "not reasonably likely additional testimony would have persuaded the court to grant [contemporaneous] section 388 petitions and offer reunification services to parents." (*In re C.J.W.*, *supra*, 157 Cal.App.4th at p. 1081; cf. *Lesly G.*, at p. 915.)

We conclude that findings supported by sufficient evidence at a selection-and-implementation hearing can inform a review of whether a hearing was required on a contemporaneous section 388 petition. Like the parents in *In re C.J.W.*, mother here wholly fails to identify additional evidence she would have presented at an evidentiary hearing that would have established a right to reunification services. (157 Cal.App.4th at p. 1081.) Just as there was an absence of evidence here to show that terminating mother's parental rights would be *detrimental* to the children (*post*, § II.B.), there was likewise an absence of evidence to show that offering reunification services to mother would *benefit* them. At best, remanding mother's section 388 petitions would be pointless since the juvenile court could hardly conclude that reunification services will advance the children's best interests after it has already determined that those interests are best advanced by terminating mother's parental rights. At worst, it would be harmful by delaying the children's permanent placement in a safe and stable home.

18

We conclude any error in failing to hold a evidentiary hearing on mother's second section 388 petition was harmless.

### B. *The Juvenile Court Properly Concluded that Mother Failed to Establish that Her Parental Rights Could Not Be Terminated Due to the Beneficial-Relationship Exception.*

Mother next argues that the juvenile court erred in terminating her parental rights because she established that her children would benefit from continuing their relationship with her under the beneficial-relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) We disagree. "At a permanency plan hearing, the court may order one of three alternatives: adoption, guardianship or long-term foster care. [Citation.] If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans." (*In re S.B.* (2008) 164 Cal.App.4th 289, 296-297.) "Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1). [Citations.] Section 366.26, subdivision (c)(1)(B)(i), provides an exception to termination of parental rights when '[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' " (*Id.* at p. 297.)

Here, there are no real questions that the children were likely to be adopted and that mother maintained regular visitation and contact with them. (*In re S.B.*, *supra*, 164 Cal.App.4th at pp. 296-297.) Thus, the only issue in determining the applicability of the beneficial-relationship exception is whether mother met her burden of proving that the children would benefit enough from a continuing relationship with her. "The 'benefit' prong of the exception requires the parent to prove that his or her relationship with the child 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' [Citations.] No matter how loving and frequent the contact, and notwithstanding the existence of an 'emotional bond' with the child, 'the parents must show that they occupy "a parental role" in the child's life.' [Citations.] The relationship that gives rise to this

19

exception to the statutory preference for adoption 'characteristically aris[es] from day-to-day interaction, companionship and shared experiences.  Day-to-day contact is not necessarily required, although it is typical in a parent-child relationship.'  [Citation.]  Moreover, '[b]ecause a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement.' "  (*In re K.P.* (2012) 203 Cal.App.4th 614, 621.)  "The exception must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond.  The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond."  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575-576.)  We review a juvenile court's order on the beneficial-relationship exception for substantial evidence.[7] (E.g., *In re S.B.*, *supra*, 164 Cal.App.4th at pp. 297-298.)

We agree with the Agency that mother failed to meet her burden.  We acknowledge there was evidence, highlighted by mother on appeal, that mother's visits with her children went well and that her children had positive reactions to her during them.  (Cf. *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947 [appellate court will affirm juvenile court's order if supported by substantial evidence, even if other evidence supports contrary conclusion].)  But this evidence fell short of establishing that mother's relationship with her children promoted their well-being to such an extent that it

---

[7] As mother recognizes, some courts have applied different standards of review.  (*In re K.P.*, *supra*, 203 Cal.App.4th at pp. 621-622 [question of whether beneficial parental relationship exists is reviewed for substantial evidence, whereas question of whether relationship provides compelling reason for applying exception is reviewed for abuse of discretion]; *In re C.B.* (2010) 190 Cal.App.4th 102, 122-123 [abuse-of-discretion standard governs review, but "pure" factual findings reviewed for substantial evidence]; *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 [applying abuse of discretion standard].)  On the record before us, we would affirm under either of these standards.  (E.g., *Jasmine D.*, at p. 1351 [practical differences between substantial evidence and abuse of discretion standards are minor].)

outweighed the well-being the children would gain in a permanent home with adoptive parents. (*In re K.P.*, *supra*, 203 Cal.App.4th at p. 621.) Mother's visits with her children were always supervised, mother was only at the beginning stages of working on the effects of domestic violence in her life, and there was still instability and dysfunction surrounding her relationship with father. By contrast, the children were in a secure placement and were bonded with their current and prospective caregivers.

Mother cares deeply for her children and has begun to gain a healthier understanding of her role in the domestic violence that injured her children and placed them at risk. But she has not shown that the juvenile court erred in terminating her parental rights.

III.
DISPOSITION

The juvenile court's orders are affirmed.


_____
Humes, J.

We concur:

_____
Ruvolo, P. J.

_____
Rivera, J.

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Charlotte Woolard<br>Honorable Julie Tang |
| Counsel for Appellant: | Amy J. Seff, under appointment by the First District Appellate Project |
| Counsel for Respondent: | Dennis J. Herrera, City Attorney, Kimiko Burton, Lead Attorney; Gordon-Creed, Kelley Holl and Sugerman, Jeremy Sugerman and Manu Pradhan |