Filed 10/16/20  In re A.H. CA2/3

(unmodified opinion attached)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B302022 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.P. et al.,<br><br>        Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. DK24185D, DK24185E)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 17, 2020 be modified as follows:

1. On page 1, line 2, the word "affirmed" is replaced with "reversed" so it reads:

"Conditionally reversed with directions."

2. On page 2, the last sentence of the first full paragraph, the word "affirm" is replaced with "reverse" so it reads:

"However, as the Department of Children and Family Services (DCFS) violated its continuing duty under ICWA to inquire, we conditionally reverse the order terminating parental rights and remand to the juvenile court for the limited purpose of enabling it and DCFS to comply with their federal and state duties under ICWA."

3. On page 18, in the DISPOSITION section, delete the entire paragraph and insert the following paragraph:

"The order terminating parental rights is reversed and the matter is remanded to the juvenile court with directions to order DCFS to comply with ICWA and with Welfare and Institutions Code sections 224.2 and 224.3 for inquiry and subsequent notice if Indian heritage is indicated. If, after proper inquiry and notice, the relevant tribe does not respond or responds that the children are not Indian children within the meaning of ICWA, then the juvenile court shall reinstate the order terminating parental rights. In all other respects the order terminating parental rights is affirmed."

The petition for rehearing and the joinder to the petition are denied.

This modification changes the judgment.

NOT TO BE PUBLISHED.

_____

DHANIDINA, J.          EDMON, P. J.          LAVIN, J.

2

Filed 9/17/20  In re A.H. CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B302022 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.P. et al.,<br><br>        Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. DK24185D, DK24185E) |

APPEAL from an order, Stephen C. Marpet, Judge Pro Tempore.  Conditionally affirmed with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant C.P.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant A.H.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

_____

C.P. (mother) and A.H. (father) appeal from the order terminating their parental rights to two toddler sons, brother (age four) and baby (age three). (Welf. & Inst. Code, § 366.26.)[1] They contend that the juvenile court erred in denying the parents' petitions for modification (§ 388), and in finding that the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (§ 224 et seq.) did not apply. We conclude that the juvenile court did not err in denying the petitions for modification. However, as the Department of Children and Family Services (DCFS) violated its continuing duty under ICWA to inquire, we conditionally affirm the order terminating parental rights and remand to the juvenile court for the limited purpose of enabling it and DCFS to comply with their federal and state duties under ICWA.

## BACKGROUND

I.    The dependency

Mother and father have five children. Only the two youngest are the subjects of this appeal.[2] The family has an extensive child welfare history because of substance abuse and

_____

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother also has a teenage son in legal guardianship who is not a subject of this appeal.

neglect. Brother was exposed to drugs prenatally and a case was opened for him in Nevada.

Mother tested positive for amphetamine at baby's birth. She was unresponsive, high, and out of control at the hospital. Mother admitted to DCFS that she used marijuana and methamphetamine during her pregnancy, and in particular the night before baby's birth. She also claimed to have been "clean." Mother stated that father was sober and had last used a couple of months earlier.

Father stated he was using marijuana and drinking alcohol, and the social worker noted father's bloodshot eyes. Father denied knowing mother used drugs the night before baby's birth. He explained that the family had slept in the truck that night, and when they awoke mother was gone.

DCFS filed a petition under section 300, subdivision (b) on behalf of all five children alleging that mother's and father's abuse of methamphetamine, amphetamine, and marijuana rendered them unable to care for or to protect the children. In August 2017, the juvenile court detained the children in foster care and awarded the parents monitored visits.

## II.    ICWA

At the time brother and baby were detained, father stated that his family members possessed Cherokee ancestry. In his parental notification of Indian status form, filed on August 3, 2017, father checked the box indicating that he may have Indian ancestry. Next to that, he wrote "Cherokee—MGM" and added paternal grandmother's name and telephone number, and paternal great-grandmother's name.

At the detention hearing that same day, the juvenile court inquired about father's Indian heritage. Paternal grandmother,

who was present in court, stated she had Cherokee ancestry although she was not a registered member of the tribe. She explained that paternal great-great-great-grandmother (the children's third great grandmother) and their fourth great grandmother, who are deceased, were "full Indian" and registered with the tribe, but did not live on the reservation. She also mentioned the Navajo. Paternal grandmother did not know the year or place of third great grandmother's birth, as she had not "followed up on it." She explained that she "just let [her] kids know . . . it was on background." She was certain that she and father could register for tribal membership. Although paternal grandmother stated that no other family members were alive who could provide additional information, and that she was "pretty much it," when the court asked her whether she could get more information, paternal grandmother said she would call her "auntie." The court stated, at "this time, the court is going to find that it's not an ICWA case as I have *no reason to know*. [DCFS] can follow up with additional information and, if they deem it appropriate, walk it on prior to noticing any Indian tribes." (Italics added.)

On August 23, 2017, according to DCFS, the juvenile court found it did not have a reason to know that the children were Indian children. Thereafter, DCFS repeatedly reported that the juvenile court had no reason to *know* that these were Indian children as defined by ICWA.

III. The reunification period

The juvenile court sustained the petition in October 2017, declared all five children dependents under section 300, subdivision (b), and removed them from their parents' custody.

4

The reunification case plan ordered by the juvenile court required the parents to complete four elements: six months of a full drug and alcohol program, weekly testing, a 12-step aftercare program with attendance logs and a sponsor, and individual counseling with a DCFS approved licensed therapist, or supervised by a licensed therapist, to address case issues.

The parents failed to comply with their case plans. They did not complete a drug rehabilitation program. They tested positive or missed tests many times, which count as dirty test results. Neither parent provided proof of attendance at a 12-step program or of a sponsor. DCFS had no indication either parent had enrolled in individual counseling.

At the six month review hearing in October 2018, father was in jail, mother was homeless, and neither parent was cooperative with DCFS. The juvenile court terminated reunification services for the parents after finding that their compliance with its orders were "nonexistent." The court scheduled a permanency planning hearing under section 366.26 and directed DCFS to initiate adoptive home studies.

IV.    The parents' section 388 petitions for modification

    A.    *The parents' initial showing*

In late July 2019, two years after the children were detained and nine months after reunification services were terminated, the parents each filed petitions under section 388 seeking reinstatement of services. As changed circumstances, they explained that they had completed six months of a drug treatment program in the Antelope Valley.

Mother attached to her petition letters from the Antelope Valley program confirming her completion of 90 days of out-

patient treatment, and a subsequent three-month program. Mother also included her 12-step attendance cards from January to mid-March 2019 only, and her drug-test results for the same period, showing a positive result.

For his prima facie showing, father submitted a certificate of completion from the same Antelope Valley 90-day treatment program dated April 15, 2019, and the identical letters as mother submitted confirming his subsequent completion of another three months with the program. He also included 11 illegible drug-test reports.

At the section 366.26 selection and implementation hearing on July 30, 2019, the juvenile court found that the modification petitions provided no information about the parents' completion of parenting classes or participation in individual therapy with a licensed therapist, stating, "*you don't have that.*" (Italics added.) The court explained that the counseling included in the drug treatment program was drug-related and thus was different than the individual therapy it had ordered as part of the case plan, which required the parents to undergo psychotherapy with a licensed therapist focused on case issues.

Nonetheless, as it was continuing the 366.26 hearing for completion of placement assessments, and to enable DCFS to file responses to the section 388 petitions, the juvenile court "set a 388 finding [that] there is a change of circumstance and it's in the minors' best interest, as a prima facie finding, and set this matter over for a hearing" for October 2019. After admonishing the parents that they both "need to get involved in individual counseling and a parenting class," the court gave them clear directions and expectations for the next hearing: "*When I come back, I'll have a therapist report, I'll have a parenting certificate,*

6

*I'll have a nice long list of testing clean, no missed or dirty"* tests.
(Italics added.)

B.    *The parents' subsequent showing*

On October 1, 2019, DCFS reported that mother was seen by a psychiatrist on August 30, 2019, and father underwent a psychiatric evaluation on August 30, 2019, but had not yet scheduled an appointment to begin individual therapy.  DCFS learned that treatment would begin *three months after father's August 2019 evaluation*.  Yet, father claimed to have been in therapy for two months, meaning since before he was evaluated at the end of August 2019.

Father's test results between August 1, 2019 and September 7, 2019 were clean.  In the same period, mother produced four positive results for marijuana, one for cocaine, and failed to submit to two tests.

Notwithstanding her positive test results, mother insisted that she had been sober for two years.  She provided DCFS with a copy of her medical marijuana card.  To justify her August 3, 2019 positive cocaine result, mother provided her discharge papers from the hospital whose emergency room had prescribed her Norco (Hydrocodone-acetaminophen, an opioid) for pain on September 3, 2019.  Father claimed he had been sober for a year and that he had completed half of his parenting classes.

DCFS was unable to confirm father's assertion that he was attending a 12-step program or that the paternal grandfather was his sponsor.  Mother provided the same 12-step attendance log she had earlier submitted, for the first quarter of 2019 only, and gave no information about a sponsor.

In its report responding to the section 388 petitions, DCFS concluded that the parents had struggled to maintain their

sobriety and had not made progress in complying with their case plans. They had not demonstrated current participation in aftercare services, which DCFS deemed crucial to maintaining sobriety. Both parents have significant childhood trauma such as sexual abuse, losses, parental substance abuse, and gang violence, yet neither parent understood the connection between their childhood traumas and their substance abuse. Mother struggled with sobriety after participating in the 90-day program, and was untruthful about her continuing abuse. DCFS was particularly concerned that the parents were trying to complete their case plans as a couple, and that mother's difficulty maintaining sobriety could affect father's sobriety. Father demonstrated no insight into this potential trigger. Meanwhile, the children were in a safe, stable home, where their needs were being met. DCFS concluded that it was in the children's best interest to provide them stability and permanency through adoption, and recommended that the modification petitions be denied.

The juvenile court again continued the section 366.26 hearing for a month. Noting that DCFS recommended it deny the section 388 petitions, the court stated, "[f]ather and mother who are both in partial compliance with other parts of the case plan. So that's the recommendation. *And the court's giving you an indicat*[ion] [of] *what the court is going to do*." (Italics added.)

V.     The section 366.26 selection and implementation hearing

DCFS reported for the section 366.26 hearing that it had no proof that the parents were enrolled in individual therapy to address case issues. Mother was still looking for a therapist. The drug rehabilitation program informed DCFS that the parents had yet to enroll in an aftercare program, but were "going to" do so, as

8

of October 24, 2019.  Father failed to appear for a test on October 4, 2019.  Mother did not submit to testing or produced positive tests for marijuana between September 2019 and mid October 2019.  Finally, DCFS had no new information about sponsors or attendance in a 12-step program.

At the section 366.26 hearing, finally held on November 1, 2019, father testified that he had completed the Antelope Valley drug and alcohol program, and re-enrolled for six months of aftercare services, which he had just started to complete, and all of his weekly drug test results were clean.  Father had been regularly attending his monthly therapy sessions for about three months.  In therapy, he learned that his children had been removed from his care because mother tested positive at baby's birth and paternal grandmother's house was not clean.  Father had been attending a 12-step program for about four months and paternal grandfather served as his sponsor.  In addition to his case plan requirements, father was taking domestic violence, anger management, and parenting classes.

The juvenile court asked whether mother's modification petition was set for a contest.  Told it was set, the court stated that it had denied that petition.  Reminded that both parents had filed their section 388 petitions on the same day, the court responded, "I read and considered both of them and I've denied both 388s.  I'll deny mother's specifically today [as] not in the minors' best interest, no change of circumstance."  Mother's attorney asked if that ruling came without allowing mother to testify, the court explained, "Right.  Mother continues to test positive for drugs and she can't complete a drug program and continue[s] to test for marijuana."  The court denied mother's request to testify about the program that she was currently in,

9

stating, "It's not relevant.  I've denied it.  It's not in this child's best interest, no change of circumstance.  None.  [¶]  Even though mother's gone through a whole program, she's still testing positive and it's not in the child's best interest."  The court then allowed mother to testify about the permanent plan.

After mother's testimony, the juvenile court stated with regard to the 388 petitions that it "indicated [it] denied both 388s as not sufficient change of circumstance and it's not in the[ ] children's best interest.  They've been out—these children are very young and have been literally out of the parents' life since the case came in in 2017 and it's not in the children's best interest."  The court terminated parental rights to brother and baby, implicitly ruling that ICWA did not apply.  The parents each appealed.

## DISCUSSION

I.    The section 388 petitions

"Section 388 provides an ' "escape mechanism" ' for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's circumstances after reunification services have been terminated.  [Citation.]  This procedural mechanism, viewed in the context of the dependency scheme as a whole, provides the parent due process while accommodating the child's right to stability and permanency.  [Citation.]  After reunification services have been terminated, it is presumed that continued out-of-home care is in the child's best interests.  [Citation.]  Section 388 allows a parent to rebut that presumption by demonstrating changed circumstances that would warrant modification of a prior court order."  (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)

10

To obtain the requested modification, the moving parent must demonstrate both a change of circumstance or new evidence and that the proposed change of court order is in the best interests of the child. (§ 388; *In re Alayah J.*, *supra*, 9 Cal.App.5th at p. 478.)

The juvenile court must hold an evidentiary hearing on a section 388 petition only if the petitioner makes the required prima facie showing. (Cal. Rules of Court, rule 5.570(d)(1) & (e); *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) "A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing." (*In re G.B.*, at p. 1157.)

We review a juvenile court's decision to deny a section 388 petition without holding a hearing for abuse of discretion. (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1158.) An abuse of discretion occurs when the juvenile court exceeds the bounds of reason by making a determination that is arbitrary, capricious or patently absurd. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

Here, at the July 2019 hearing, the juvenile court found that the parents had not demonstrated prima facie a change in circumstances because neither parent had enrolled in individual therapy to address case issues. Nonetheless, the court gave the parents an opportunity to make a prima facie showing of change and gave them a road map, stating they needed to provide a therapist's report, parenting certificates, and only clean test results.

11

The juvenile court allowed father to testify about his section 388 petition and then denied the petition. Father contends that he showed a change of circumstances in the three and a half months between the July and November 2019 hearings and so the court abused its discretion in denying the petition. Father is wrong. Although father has made great strides toward conquering his substance abuse, he produced a dirty test result just before the final hearing, and provided insufficient evidence of participation in a 12-step program. Father's circumstances were changing but had not changed, which is insufficient, given his long history of drug and alcohol use. (See, e.g., *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Moreover, father told DCFS and testified that he was in therapy every other week. But the only report in the record indicates that father underwent a psychiatric evaluation on August 30, 2019, but did not schedule an appointment to begin therapy, and according to the mental health center, treatment was not set to begin right away. DCFS received no further confirmation of father's therapy and father did not submit the therapist's report that the court had requested. The court was entitled to believe the documentation over father's testimony.

Moreover, father did not show that the modification he sought would be in the children's best interest. Father took no responsibility for this dependency, blaming it on mother's positive drug test at baby's birth and paternal grandmother's dirty house. "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) As brother was a toddler and baby was a newborn when they were placed in foster care, the parents were entitled no more than a year of reunification services. (See § 361.5,

12

subd. (a)(1)(C).)  This dependency has lasted more than three years, well over a year beyond the date when the services were terminated, and the focus had shifted to the children's needs for permanency and stability.  (See *In re G.B.*, *supra*, 227 Cal.App.4th at p. 1163.)  Father was unable to comply with services for over two years.  Postponing stability and finality for these children to see whether father could comply with his case plan is simply not in the children's best interest.

Turning to mother, she contends that the juvenile court denied her due process when it refused on November 1, 2019 to allow her to present evidence on her section 388 petition after it found on July 30, 2019 that she had made a prima facie showing to warrant a hearing.

As a preliminary matter, we disagree with mother that at the July 2019 hearing the court actually *found* that mother had made a prima facie showing to justify a hearing.  Rather, the court stated, other than completion of a six month drug program, "*I don't have any information regarding parenting class or individual counseling.  [¶] . . . [¶] . . . So you don't have that.*"  (Italics added.)  Immediately thereafter, the court stated, "Both mother and father need to get involved in individual counseling and a parenting class" and to test clean for the next hearing.  In other words, had the court considered the petitions right then, it would have summarily denied them for lack of a evidence of a change in circumstance.  (Cf. *In re G.B. supra*, 227 Cal.App.4th at p. 1157 [prima facie case when probable cause supports allegations].)  The court only stated that there was a change in circumstance and that the change would be in the children's best interest to enable DCFS to respond to the petitions and to give

13

the parents time to show the changes they failed to make in their petitions.

Nonetheless, even assuming the juvenile court actually found changed circumstances such as would justify a hearing, we conclude that any error in denying mother's request to testify was harmless. In the three months following mother's initial section 388 petition, which the court found failed to make a prima facie showing, mother made no progress in therapy. DCFS had one report, from late August 2019, stating that mother had been seen by a psychiatrist on that day. Mother asserts that she completed individual counseling as part of her drug rehabilitation program. Yet, the court explained in July 2019 that such counseling was *not* the psychotherapy it had ordered as part of the case plan. Otherwise, mother admitted in late October 2019, just before the section 366.26 hearing, that *she was still looking for a therapist*.

Nor did mother make progress in overcoming her drug addiction even after she underwent drug treatment. Her drug tests were not clean. Mother's reliance on her medical marijuana card is unavailing. Marijuana is still a drug. Mother argues had she been allowed to testify she would have explained that her positive cocaine result was because she was discharged from the hospital with a prescription for a cocaine derivative. But the juvenile court had these documents at the hearing. They show that mother tested positive for cocaine on *August* 3, 2019, but was prescribed hydrocodone on *September 3*, 2019, a month *later*. Otherwise, mother did not make an offer of proof or identify any other facts about which she would have testified had she been given the chance. Therefore, it is not reasonably probable that a result more favorable to mother would have been reached in the

14

absence of the asserted error. (See *In re Maria Q.* (2018) 28 Cal.App.5th 577, 599.)

II.    ICWA error

Father, joined by mother, contends that the juvenile court erred in finding it had no reason to know that the children were Indian children. DCFS acknowledges that the amendments to sections 224.2 and 224.3 that went into effect on January 1, 2019 apply to this case because the section 366.26 hearing occurred in November 2019. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 320.)

The juvenile court is mandated by section 224.2, subdivision (c) to ask each participant present at the first appearance in court "whether the participant knows or has reason to know that the child is an Indian child" and to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." The court did just that at the detention hearing.

The juvenile court correctly found that it did not have reason to *know* that brother and baby were Indian children. None of the six criteria listed in section 224.2, subdivision (d)[3]

_____

[3] Section 224.2, subdivision (d) reads: "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances:  [¶]  (1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.  [¶]  (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.  [¶]  (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information

15

were present to give the court *reason to know* that brother and baby were Indian children.

Nonetheless, that finding did not eliminate the duty of further inquiry. The juvenile court has a duty of inquiry even as late as the section 366.26 hearing. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 11.) Also, under the amended statute, the juvenile court "shall make further inquiry regarding the possible Indian status of the child" (§ 224.2, subd. (e)) if there is "reason to *believe*" that an Indian child is involved in a proceeding" (§ 224.2, subd. (e), italics added). Here, paternal grandmother stated that the children's third and fourth great grandmothers were registered tribal members. Although that information did not establish any of the criteria necessary to mandate tribal *notice*, which is triggered if "there is a reason to know" (§ 224.2, subd. (f)), the information certainly gave the juvenile court and DCFS *reason to believe* that Indian children were involved. An extended family's statement can provide more than a " 'vague, attenuated and speculative' " tribal connection. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 888.) Paternal grandmother confirmed that she had ancestors who were tribal members and that she and father were qualified to be registered members. Given this confirmation, the duty of inquiry persisted. We reject DCFS's contention that "as a practical matter, any further inquiry would

—————————

indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."

16

not provide the court with additional information." Although paternal grandmother stated she was pretty much the only person in the family with information, she also stated that there was a great aunt. DCFS was obligated at a minimum to inquire about the information paternal grandmother obtained from great aunt, or to contact great aunt directly, and to inquire of any other extended members of father's family. (See § 224.2, subd. (e); *In re A.M.*, *supra*, 47 Cal.App.5th 303, 322–323.)

DCFS relied on the juvenile court's finding that it did not have reason to *know* brother and baby were Indian children to shirk its responsibility of further *inquiry*. However, immediately after making its reason to know finding, the juvenile court stated that DCFS "can follow up with additional information and, if they deem it appropriate, walk it on prior to noticing any Indian tribes." DCFS never followed up.

17

## DISPOSITION

The order terminating parental rights is conditionally affirmed.  We order a limited remand with directions to the trial court to comply with ICWA and with Welfare and Institutions Code sections 224.2 and 224.3 for inquiry and subsequent notice if Indian heritage is indicated.  If, after proper inquiry and notice, the relevant tribes do not respond or respond that the children are not Indian children within the meaning of ICWA, the order terminating parental rights shall immediately be reinstated.  If any tribe determines that the children are Indian children, the parents may petition the court to invalidate the termination of parental rights upon a showing that such action violated ICWA.

NOT TO BE PUBLISHED.

DHANIDINA, J.

We concur:

EDMON, P. J.

LAVIN, J.

18