Filed 8/26/20  In re H.H. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re H.H., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. R.H., Defendant and Appellant. | A159078 (San Francisco County Super. Ct. No. JD17-3179) |

In this dependency action, R.H. (Father) appeals the juvenile court's order terminating his parental rights over his son, H.H. (Minor).  We affirm.

BACKGROUND

In July 2017, the San Francisco Human Services Agency (Agency) filed a Welfare and Institutions Code section 300[1] petition on behalf of Minor, then four years old.  Minor was detained in August and placed in foster care.

---

[1] All undesignated section references are to the Welfare and Institutions Code.

According to initial Agency reports, the apartment Father and Minor shared was cluttered and filthy and on multiple occasions Minor was visibly dirty and wearing no clothes.[2] Minor was exhibiting significant developmental delays, but Father failed to follow up on multiple appointments and referrals. Father admitted to having a substance abuse problem and told the Agency "most of the time he is completely overwhelmed with parenting [Minor]." The Agency social worker stated Father was "a very loving father" and "loves [Minor] to death." In September, Father submitted to an amended petition and the juvenile court ordered reunification services.

In March 2018, the Agency reported that Minor had recently been diagnosed as autistic and had developmental and language delays. Father had weekly supervised visits that he attended inconsistently, apparently due to problems with his phone and health issues. When he did attend visits, he was appropriate. Father was participating in individual therapy and outpatient drug treatment, but had left a residential program early and had multiple positive drug tests. In June, the juvenile court ordered six additional months of services.

In August 2018, the Agency reported that during supervised visits and therapeutic visits, Father was appropriate with Minor, attuned to Minor's needs, and able to comfort Minor and provide affection and attention. The Agency social worker noted, "No[] one is doubting how much [Father] loves and cares about [Minor], and vice-versa . . . ." However, Father's attendance continued to be inconsistent and when he missed visits, as he did many times, Minor became extremely upset and threw tantrums that could last

---

[2] Father had been awarded full physical custody of Minor in a family court case. Mother died during the dependency proceedings.

hours.  Father continued to struggle with substance abuse and left three residential treatment programs within the first week of the program.

In June 2019, after the twelve-month review hearing had been continued several times, the Agency filed another status report.  Father failed to make "any consistent progress[] with any of his court ordered services nor has he made any behavioral changes."  Father entered two more residential treatment programs but left each after less than two weeks and continued to have multiple positive drug tests.  He failed to enroll in a parenting class.  His apartment remained cluttered and dirty.  His supervised visits with Minor were appropriate but he continued to miss numerous visits, greatly upsetting Minor.  The Agency social worker had "repeatedly explained and stressed" the emotional impact of missed visits on Minor, with no apparent effect on Father's behavior.  The Agency social worker opined that Father "loves [Minor] very much" but is "extremely disorganized and irresponsible," and "does not appear to realize the emotional [e]ffect it has on [Minor] when visits are cancelled."  At the twelve-month review hearing, the court terminated reunification services and set a section 366.26 hearing for October.

In September 2019, the Agency filed a section 366.26 report recommending termination of Father's parental rights.  The report stated Minor had moved to a new foster home in July and his foster parents were committed to adopting him.  Minor had established a good relationship with them in just a few months, appeared very happy and comfortable with them, and reportedly described them to others as his family.  He was doing well in school, was in good health, and his behavior had significantly improved.  Visits with Father were positive, Minor appeared happy and comfortable with Father, and Father had been attending more consistently.  Father and

Minor's foster parents were Minor's "strongest permanent connections" and Minor told the Agency social worker he was proud to have three dads in his life.

In October 2019, the juvenile court suspended Father's visits on Minor's counsel's motion, following reports from the foster parents that Minor returned from a visit talking about his mother's death in graphic detail and that Father told Minor they were going to live together, causing Minor anxiety and confusion. Visits were reinstated the following month.

At the November 2019 section 366.26 hearing, Father's therapist of six years testified. For three years, Father brought Minor to most of his weekly sessions and the therapist observed them together. The therapist testified that Father was attentive to Minor and his needs, Minor was very attached to Father, and Minor became upset on one occasion when Father left. The therapist had not observed them together since Minor's detention in the summer of 2017—more than two years earlier. The Agency social worker testified that Minor's relationship with Father was beneficial, Father acts as a parent during supervised visits, and Minor calls Father "dad."

The juvenile court found Father and Minor had a beneficial relationship, but the beneficial relationship was not so significant as to outweigh permanency. The court terminated Father's parental rights and set a permanent plan of adoption.

DISCUSSION

I. *Beneficial Parental Relationship Exception*

Father first argues the juvenile court erred in finding the beneficial parental relationship exception did not apply. We disagree.

4

A.    *Legal Principles*

"At a permanency planning hearing, the court may order one of three alternatives—adoption, guardianship, or long-term foster care.  [Citation.]  If a child is adoptable, there is a strong preference for adoption over the alternative permanency plans.  [Citations.]  If the court determines that a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)."  (*In re Collin E. (*2018) 25 Cal.App.5th 647, 663.)

"An exception to termination of parental rights applies where '[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.'  (§ 366.26, subd. (c)(1)(B)(i).)  'Evidence of "frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.'  [Citation.] ' "[B]enefit from continuing the . . . relationship" ' means the parent-child relationship 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.'  [Citation.]  'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' "  (*In re Collin E., supra,* 25 Cal.App.5th at p. 663.)

As the parties note, courts have applied different standards when reviewing the applicability of the beneficial relationship exception: some courts have used a substantial evidence standard, while others have applied an abuse of discretion standard.  (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1166, fn. 7.)  The issue is currently before the California Supreme Court.  (*In*

5

*re Caden C.,* review granted July 24, 2019, S255839.) We need not weigh in on the matter because, "[o]n the record before us, we would affirm under either of these standards." (*In re G.B.,* at p. 1166, fn. 7.)

B. *Analysis*

It is undisputed that Father maintained regular visitation and had a beneficial relationship with Minor. The issue before us is whether the juvenile court erred in finding the parental relationship did not outweigh the benefits of adoption.

Father relies on *In re E.T.* (2018) 31 Cal.App.5th 68. In that case, twins were removed from their mother's care when they were four months old, returned after a year, and removed again after another year. (*Id.* at p. 71.) The mother struggled with addiction but, with some relapses, remained in treatment. (*Id.* at pp. 71–72.) The mother consistently visited the children and talked to them on the telephone between visits. (*Id.* at pp. 73–74.) The Court of Appeal found the mother "provided [the children] comfort and affection, and she was able to ease their fear and anxiety." (*Id.* at p. 76.) Further, the four-year-old children "have spent almost half their lives with [their m]other" and "are 'very tied to their mother.'" (*Id.* at p. 77.) "[D]espite denial of services, [their m]other continued to participate in programs designed to maintain her sobriety and make her a better parent. She has consistently tested negative for drugs, and during the dependency remained in drug treatment, took classes in life skills, parenting, cognitive behavior, criminal thinking, anger management and children of alcoholics and addicts. Moreover, the insight she has into her own development and the love and care she has for her children was clear in her testimony." (*Ibid.*) The Court of Appeal concluded, "There is no question that the twins have a

6

substantial and positive attachment to [their m]other such that terminating their familial relationship would cause them great harm." (*Ibid.*)

Father argues the reasoning of *In re E.T.* applies here. Father points to his status as Minor's primary caregiver for more than half his life.[3] Father also points to evidence that Minor exhibited distress at being separated from Father. However, the cited evidence was outdated at the time of the section 366.26 hearing: Father's therapist last saw Minor more than two years earlier, and the most recent Agency report suggested Minor was no longer having tantrums after visits. In addition, there are material differences distinguishing this case from *In re E.T.* Father failed to make any substantial efforts in treating his addiction, tested positive numerous times throughout the dependency proceeding, and failed to enroll in a parenting program or take other significant measures toward improving his parenting abilities. Father missed numerous visits with Minor despite being told repeatedly that missed visits had a negative impact on Minor. Indeed, the Agency reported that Father did not appear to understand the impact of his behavior on Minor. While Minor is attached to Father, Minor also quickly developed a bond with his new foster parents. Father fails to demonstrate the juvenile court erred in finding the beneficial relationship exception does not apply.

II.    *Exclusion of Evidence*

Father argues the juvenile court's exclusion of certain evidence violated his due process rights. We reject the claim.

---

[3] Father claims he was Minor's caregiver for five years; the Agency asserts it was only three years. Based on our review of the record, it appears that Minor initially lived with his mother and began living with Father sometime between August 2013 and January 2014. Father was thus Minor's primary caregiver for around three and a half to four years.

During the testimony of Father's therapist, Father's counsel began to ask questions about attachment and sought to qualify the therapist as an expert in child psychology. The juvenile court sustained objections to the questions, reasoning it was not disputed Father and Minor had a bond, the court had already denied Father's request for a bonding expert, and the therapist never provided services to Minor. The court allowed the therapist to testify about her observations of Minor and Father.

The exclusion of this testimony did not violate Father's due process rights. " 'Due process is a flexible concept which depends upon the circumstances and a balancing of various factors. [Citation.] The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court.' " (*Sheri T. v. Superior Court* (2008) 166 Cal.App.4th 334, 341.) The existence of a bond was not in dispute, the therapist never provided professional services to Minor, and the last time she saw Minor was more than two years before the section 366.26 hearing. The excluded evidence was not of significant probative value. For the same reasons, the juvenile court's exclusion of this evidence was not an abuse of discretion.

To the extent Father relies on arguments raised in his previous appeal of the juvenile court's denial of his request for a bonding study, we reject them for the reasons set forth in our decision affirming the court's order. (*In re H.H.* (May 6, 2020, No. A158046) [nonpub opn.].) We also reject any attempt by Father to re-raise his challenge to the bonding study denial.

## DISPOSITION

The order is affirmed.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BURNS, J.

(A159078)

9