Filed 5/20/21  In re L.E. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re L.E., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B307117 (Super. Ct. No. 19JV00290) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.A.,<br><br>    Defendant and Appellant. | |

Mother appeals the denial without an evidentiary hearing of her petition pursuant to Welfare and Institutions Code section 388. [1]  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

FACTS

L.E. was born in April 2019. On July 31, 2019, the Santa Barbara Department of Social Services (DSS) received a call from Santa Barbara Cottage Hospital. Hospital personnel told DSS that L.E. had been brought to the emergency room for excessive irritability on four prior occasions. On each occasion, L.E. had bruising the parents could not explain. Finally, the child was admitted to the hospital and tests were ordered. The tests show L.E. had three fractured ribs in various stages of healing and a fractured skull. That L.E.'s ribs showed various stages of healing indicated that the injuries were inflicted over a period of time. Again the parents could not explain L.E.'s injuries.

*Detention Hearing*

On August 2, 2019, DSS filed a juvenile dependency petition. The petition alleged the juvenile court had jurisdiction under section 300, subdivision (a); the child suffered serious physical harm nonaccidentally inflicted by the child's parent; and failure to protect under section 300, subdivision (b)(1). Later DSS filed an amended petition alleging severe physical abuse of a child under five years old under section 300, subdivision (e).

The juvenile court ordered that L.E. be detained out of the parents' home and the matter be set for a jurisdictional hearing.

*Jurisdictional Hearing*

At the jurisdictional hearing, DSS relied on section 355.1, subdivision (a). The section provides where a court finds that an injury sustained by a minor would ordinarily not be sustained except as a result of the unreasonable or neglectful acts or omissions of either parent, the finding shall be prima facie evidence of jurisdiction.

2

DSS also filed a jurisdictional report. Mother reported that she had known Father since she was a child, but they became romantically involved two years ago. She described their relationship as good. They were always with L.E. and her daughter, J.A.[2]

Father tested positive for methamphetamine. Mother said she did not think he was using and that things can go wrong with the test. She never saw him use drugs.

Mother said she never saw Father hurt L.E., and she does not think he would do something like that. She said she thinks L.E. was born that way. She said only that she and Father take care of the child. She is the primary caregiver. She occasionally leaves L.E. with Father to go to the store or take a shower. Father is good with kids.

Mother testified that she was a victim of domestic violence perpetrated against her by J.A.'s father, and that she would never tolerate violence by Father. She admitted, however, that she knew before she became romantically involved with Father that he had at least one conviction for domestic violence.

Father asked a DSS worker why he was ordered to go to a drug program if he never used drugs. The worker told Father that he tested positive for methamphetamine. Father said that no one told him. He had been told in open court. Father insisted he never used drugs.

Father stated multiple times that he does not know how L.E. was injured. He said Mother is a good mother and takes good care of L.E.

---

[2] DSS originally detained J.A., who was eight years old, along with L.E. J.A. was subsequently returned to Mother's custody and is not a party to this appeal.

Father has a criminal history of multiple convictions for battery on a spouse. He confirmed that he is on probation and that his ex-girlfriend has a restraining order against him.

Dr. Drew Kelts told a DSS worker that he is very concerned about L.E.'s safety. If he had not caught L.E.'s injuries when he did, it is likely L.E. would be dead. He said, "[T]he kid had been beaten up quite a bit."

The juvenile court found that the allegations of the amended petition to be true, and that L.E. is a child described in section 300, subdivisions (a), (b)(1), and (e). The matter was set for a disposition hearing.

*Disposition Hearing*

The juvenile court held a disposition hearing in March 2020.

DSS reported that it had received a copy of a police report. Mother told the police that she had been battered by Father on December 24, 2019. Mother told the police that she and Father spent the day together. When they got to her home, Father became angry because he thought she was looking at another man. Father grabbed her hair and pulled her down, striking her head on a table. He then choked her and tried to rape her before fleeing her home. Mother said she was no longer in a relationship with Father, but they were sexually active. She told the police that L.E. had been detained by DSS due to injuries caused by Father. The police located Father and arrested him.

Mother did not volunteer information about the December 24, 2019, incident when she met with a DSS worker in January 2020. It was only when the DSS worker told Mother she was aware of the incident that Mother admitted it occurred.

4

Mother testified that she took L.E. to the doctor on multiple occasions because he was fussy, not eating, and bruised. It was not until L.E. was finally hospitalized that Mother learned he had sustained fractures to his ribs and skull.

Mother testified she ended her relationship with Father in October 2019, in part because of the allegations in this case. But she resumed a physical relationship with him in December because she was lonely and sad.

The incident of December 24 changed her view of Father, and she has accepted that Father was responsible for the injuries to L.E.

The juvenile court found that L.E. suffered severe physical abuse inflicted by Father, and that Mother knew or should have known of the abuse. The court found by clear and convincing evidence that reunification services need not be provided pursuant to section 361.5, subdivision (b)(5). The court further found that Mother had not shown that services would prevent re-abuse or that it would be detrimental to L.E. if Mother was not provided services. The court ordered that services would not be provided to Mother, and set the matter for a hearing pursuant to section 366.26.

*Section 388 Petition*

In June 2020, Mother filed a petition pursuant to section 388, requesting that the juvenile court modify its order denying reunification services. Mother's petition alleged that there had been a change of circumstances. She had completed courses on parenting and domestic violence. She was also in counseling and had worked through hurdles to become more assertive in relationships.

Mother attached to her petition certificates of completion for the parenting and domestic violence courses. She also attached a letter from her therapist. The letter stated in part:

"In treatment, [Mother] has been working on identifying patterns of abuse throughout her life, understanding the cycle of abuse in relations to domestic violence, strengthening parenting skills, increasing insight around how her culture has impacted her relationship choices, and learning assertiveness skills in order to set effective interpersonal boundaries. Through Cognitive Behavioral Therapy (CBT), [Mother] is learning to restructure destructive cognitive distortions that have led to poor decision making in terms of choosing romantic partners. CBT has allowed [Mother] to recognize how her thinking patterns can be harmful at times and she has made significant progress in reframing these in order to make healthier decisions in the future.

"It is worth noting that [Mother's] culture also plays a significant role in her psychology. In many Latino cultures, males are seen as the head of the household and are rarely questioned, making it difficult for [Mother] to assert herself in her relationship. [Mother] has been exploring how her cultural upbringing influenced her view of relationships and her role in them. She is learning effective assertiveness skills on order to recognize her rights as a partner, and human being in general, and communicate these in a productive way."

Mother alleged in her petition that L.E. will benefit in the long term by preserving a relationship with his natural parent and sibling, and that Mother can now provide a safe and nurturing environment for L.E. Mother requested that L.E. be placed with his maternal aunt and uncle while reunification

6

services are provided, or permanently if the request for unification is denied.

The juvenile court denied Mother's section 388 petition. The court found that the petition shows only changing circumstances, not changed circumstances required for relief under section 388. The court denied Mother an evidentiary hearing on her petition.

The juvenile court later denied the maternal aunt's section 388 petition requesting custody of L.E. Mother appealed from the denial of both her section 388 petition and the maternal aunt's petition. Mother raises no issues relating to the denial of the maternal aunt's section 388 petition.

DISCUSSION

Mother contends the juvenile court abused its discretion in denying her section 388 petition without an evidentiary hearing.

Section 388, subdivision (a)(1) allows a parent of a child who is a dependent of the juvenile court to petition to change, modify, or set aside any order of the court on the grounds of changes of circumstances or new evidence.

A parent's petition must show a prima facie case before she is entitled to an evidentiary hearing. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) The parent must show both a change of circumstance and that the order being sought is in the best interest of the child. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 [no evidentiary hearing required unless parent makes prima facie showing of both change of circumstances and best interest of the child].)

*(a)  Change of Circumstances*

Here Mother's petition alleged a change of circumstances due to completion of domestic violence and parenting courses and participation in behavioral therapy.

The juvenile court found Mother's petition did not show a change of circumstances, only changing circumstances.  Her therapist's letter uses such terms as "working on," "increasing insight," "learning," and "significant progress."  The letter refers to "patterns of abuse throughout [Mother's] life" and that her "culture plays a significant role in her psychology."  The tenor of the letter is that Mother is in the process of becoming a person who is capable of protecting herself and her child, but the process is not complete.  Indeed, it would be naïve to conclude that a life-long pattern of thinking supported by cultural factors can be reversed by a handful of courses and a few months of therapy.

*(b)  Best Interest of the Child*

When, as here, the juvenile court bypasses reunification services due to a finding that the child suffered severe physical abuse (§ 300, subd. (e)), the presumption is that services are not to be provided to a parent.  (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157.)  When that presumption applies, a juvenile court may modify an order denying reunification services, only if there is clear and convincing evidence that the services would be in the child's best interest.  (*Ibid.*)

In assessing the best interest of the child, the juvenile court looks to three factors:  (1) the seriousness of the reason for detention, (2) the strength of the existing bond between the parent and child, and (3) the degree to which the problems that led to detention can be and have been addressed.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530-532.)

8

The reason for L.E.'s detention was most serious. He had fractured ribs and a fractured skull. L.E.'s doctor told a DSS worker that L.E. would have died had he not intervened. The seriousness of L.E.'s injuries alone militates strongly against the provision of services aimed at returning him to Mother.

As to the bond between Mother and child, DSS removed L.E. from Mother's custody when L.E. was three and one-half months old. Since then, Mother has had supervised visits with L.E., but he has not been returned to her custody. Any bond that may still exist between Mother and child is overwhelmed by the need to protect L.E. from Mother's demonstrated inability to provide protection from severe physical injury.

Finally, although Mother is addressing the problem that led to L.E.'s detention, the process is incomplete. When, if ever, it will be complete is uncertain. Mother's history of abusive relationships and her willful blindness to Father as the source of her child's injuries suggest that the journey will be neither easy nor brief. In the meantime, childhood is short. L.E. is entitled to spend his in a safe and stable home.

There is nothing in Mother's section 388 petition that indicates she can meet her burden of proving by clear and convincing evidence that the provision of reunification services is in the best interest of the child. Her petition fails to state a prima facie case. The juvenile court did not err in failing to grant an evidentiary hearing.

DISPOSITION

The judgment (order) is affirmed.

NOT TO BE PUBLISHED.


                                    GILBERT, P. J.

We concur:



PERREN, J.



TANGEMAN, J.

Jean M. Dandona, Arthur A. Garcia, Judges

Superior Court County of Santa Barbara

———————————————

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, and Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.