Filed 6/14/23  In re M.M. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B318980 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>Valeria M.,<br><br>     Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP06955-B) |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

————————

Mother appeals the juvenile court's summary denial of her March 2022 Welfare and Institutions Code section 388[1] petition concerning her daughter, M.M. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

I.   *Assumption of Jurisdiction*

M.M. came to the attention of the Department of Children and Family Services (DCFS) at birth in September 2020 because Mother had failed to reunify with her older child in a pending dependency matter. When DCFS met with Mother in the hospital, Mother said she had skipped drug tests and avoided the social worker in her older child's case because she had been using methamphetamine and marijuana. She said she had been sober for several months, and the last time she used drugs was April 16, 2020, the day she found out she was pregnant with M.M. She had attended Narcotics Anonymous meetings before she was incarcerated over the summer, and she had enrolled in outpatient drug treatment after her release. She was motivated to keep M.M. in her care and willing to participate in services.

On September 24, 2020, Mother entered a residential substance abuse treatment program at the Los Angeles Centers for Alcohol and Drug Abuse (LACADA). She also participated in a Child and Family Team Meeting. During the meeting, Mother expressed a desire to keep M.M. in her care and reunify with her older child. DCFS had substantial concerns about Mother because she had not cooperated with DCFS, complied with court orders, appeared for drug testing, or completed required

---

[1]   Undesignated statutory references are to the Welfare and Institutions Code.

2

programs in the case involving her older child, but based on Mother's representation that she had been drug-free since April 2020 and her enrollment in a residential program, DCFS allowed M.M. to remain in Mother's care.

DCFS soon learned Mother had lied: she had tested positive for methamphetamines the day before she met with DCFS and enrolled in the treatment program. M.M. was removed from Mother's custody on October 14, 2020, and placed with her aunt. DCFS filed a petition alleging M.M. was subject to the jurisdiction of the juvenile court under section 300, subdivisions (a) (physical abuse), (b)(1) (failure to protect), and (j) (abuse of sibling).

Mother remained in her treatment program with LACADA until late December 2020. She had been due to leave the in-patient program and to commence outpatient treatment, but she was administratively discharged from the program after she engaged in aggressive behavior and inappropriate comments toward staff. Mother's drug tests while in the program had been negative. Her progress in treatment was described as "average except her ability to manage aggressive behavior towards staff and peers," where she had made no progress.

Mother's DCFS drug test on December 8, 2020, was negative. She failed to appear for testing on December 22, 2020.

On January 5, 2021, Mother pleaded no contest to the allegation under section 300, subdivision (b)(1), that her substance abuse rendered her unable to provide regular care to M.M. and subjected M.M. to a risk of serious physical harm or damage. The court found the count true, dismissed the remaining allegations, and declared M.M. a dependent child of the juvenile court.

Mother was ordered to undergo a minimum six-month full drug program with aftercare, random or on-demand weekly drug testing, and a 12-step program. She was ordered to take a developmentally appropriate parenting class and to participate in individual counseling to address her self-esteem, past trauma, coping skills, and anger management. Mother was granted three hours of monitored visitation, three times per week.

## II. *Reunification Services Period*

Mother failed to appear for court-ordered drug testing on January 7 and January 20, 2021. On January 20, Mother reported to DCFS that she was not calling in to find out if she was scheduled to test; she was afraid of being exposed to COVID-19 at the testing location. The social worker urged Mother to call in and not to miss further tests.

Mother told DCFS in January 2021 that she had completed 14 sessions of parenting classes while in the LACADA in-patient program, and she provided the certificate of completion. Mother said she participated in 12-step meetings while in the LACADA inpatient program, but she provided no documentation of her attendance. She was attending individual counseling, had an appointment to enroll in LACADA's outpatient program, and was working on obtaining a sponsor.

Mother missed her next court-ordered drug test on February 4, 2021. On February 5, 2021, Mother told DCFS she was attending substance abuse counseling, with drug testing, at LACADA. She claimed not to realize she had to test with DCFS since she was testing for LACADA, and the social worker told her she had to do the court-ordered tests as well. Mother reported meeting with her counselor every week and seeing a therapist at Jovenes, Inc.

4

Through LACADA, Mother tested positive for amphetamines and marijuana on February 11, 2021, and her specimen given on February 26, 2021 was diluted. She failed to appear for a court-ordered drug test on March 5, 2021, but tested negative through LACADA that day. Mother's specimen was again diluted at her LACADA drug test on March 12, 2021.

On March 19, 2021, Mother met with the social worker and said her focus was to gain custody of her two children. She denied any urge to use drugs. Mother said she was not submitting to court-ordered drug testing because it was "too much" given her weekly LACADA tests. Once again, the social worker instructed Mother to call in to find out if she was called to test. That same day, Mother failed to appear for her court-ordered drug test and tested positive for marijuana on her LACADA drug test.

Mother tested positive for amphetamines and/or marijuana on LACADA drug tests on March 26 and April 9, 2021. At her April 20, 2021 LACADA counseling session, Mother said she believed a higher level of care would benefit her because she was relapsing, but after the counselor gave her referrals and information she never heard from Mother again. Mother did not participate further in the LACADA program.

On April 22, 2021, Mother did not appear for her drug test, and she failed to respond to messages and calls from the social worker on April 27, 2021.

Mother had consistently visited M.M. and was reported to be attentive and largely appropriate during visits. However, on May 3, 2021, Mother appeared at the maternal aunt's house when no visit was scheduled and demanded to see the children. Mother pulled out a window screen trying to gain access to the

home, leading the maternal aunt to call the police. The maternal aunt suspected Mother might be using drugs again, as she only behaved in that manner when she was using drugs.

Mother did not appear for her court-ordered drug test on May 5, 2021. On May 10, she texted the social worker asking for an in-person meeting. They agreed to meet on May 18, 2021. Mother did not answer calls from the social worker, she did not respond to a text confirming the meeting, she did not appear for the meeting, and she did not respond to the social worker's text after she failed to appear. The social worker attempted to meet with Mother at her home, but she was unable to enter the gated building and her telephone call to Mother went to voice mail. Mother was also a no-show for her court-ordered drug testing on May 21 and June 8, 2021.

Mother met with DCFS on June 15, 2021. The social worker asked where Mother had been and why she could not be reached for three months. Mother said personal issues she did not wish to discuss had caused her to discontinue contact with DCFS, leave her treatment program, and stop drug testing. Mother said she was still living in the same place, but she gave the social worker a different address than she had previously provided.

Mother reported she had been clean for 14 days and that she needed to enroll in an in-patient drug and alcohol treatment program to maintain her sobriety. She planned to enroll in the LACADA program again. Mother said her goal was to reunify with her children and she was willing to maintain her sobriety.

Mother missed her court-ordered drug test on June 23, June 30, July 7, July 12, and July 20, 2021. In July 2021, Mother told DCFS she had not drug tested because she had been "a little

sick." Mother said she had enrolled in an outpatient treatment program at Liberty Community Plaza Counseling. She said she was "still working on" getting a counselor there, and she had been in communication with "Maria." Liberty Community Plaza Counseling was unable to confirm or deny whether Mother was a client unless Mother signed a consent form; however, they did not have a counselor named Maria.

The court held a review hearing pursuant to section 366.21, subdivision (e) on August 10, 2021. Mother produced a July 8, 2021 letter from United Friends of the Children stating that she had been "meeting her program requirements at Pathways," attended virtual life skills sessions, and met with her counselor weekly. The letter did not describe the program or give dates for Mother's enrollment and participation.

The court found Mother had not made substantial progress toward alleviating the causes necessitating M.M.'s out-of-home placement. The court terminated reunification services and set a permanency planning hearing for December 7, 2021.

III.    *First Section 388 Petition*

In December 2021, Mother filed a section 388 petition asking that M.M. be released to her, or, in the alternative, that the court order additional reunification services. As the changed circumstances, Mother asserted that she had been enrolled in the Jovenes program since November 16, 2021. She had taken courses addressing "individual therapy, substance use, treatment goals and age appropriate parenting strategies." Mother claimed she had been consistent in her classes, continued to be sober, and continued to "amend her past transgressions." According to Mother, a change in order would be in M.M.'s best interest because she had "complied with the court[']s ruling and is

7

enrolled in a program that supports her to have housing support"; she visited every week; Mother had "maintained her love for her child and they share a bond pre-existing any court intervention"; and it would support M.M.'s interest in permanency, stability, and family ties.

Mother supported her application with two letters. One was the letter from United Friends of the Children she had previously submitted to the court for the section 366.21, subdivision (e) review hearing. The other was a November 16, 2021 letter on Jovenes letterhead from her therapist. Contrary to Mother's assertion in her petition that she had enrolled in the Jovenes program on November 16, 2021, this letter (dated November 16, 2021) stated she had participated in the Youth Family Reconnection program from February 2020 to September 2021. Through this program, which sought to reduce homelessness among transition-age youth, Mother received weekly individual therapy and case management supportive services.

The court denied the section 388 petition without a hearing because the petition did not state new evidence or a change of circumstances, and the proposed change did not promote M.M.'s best interest.

IV.  *Second Section 388 Petition*

Mother filed a second section 388 petition on March 2, 2022. She again sought a home of parent order, or, in the alternative, the reinstatement of reunification services. The alleged changed circumstances were identical to the changed circumstances cited in the first section 388 petition, except that now Mother specified a different program—the Angel Step Too residential program. As before, Mother contended the change of

8

order would be in M.M.'s best interest because she had complied with the court's ruling, she loved her children, their visits demonstrated their deep bond that formed before court intervention, and granting the petition would support M.M.'s interest in permanency, stability, and family ties.

Mother attached DCFS's February 7, 2022 Last Minute Information report as support for her petition. This report stated Mother enrolled in the Angel Step Too residential program on November 4, 2021, but left the program for unknown reasons on January 21, 2022. Mother had not advised DCFS when she left the program, nor had she informed DCFS where she was now living. Mother's location was unknown.

The court summarily denied the petition on March 4, 2022, on the grounds that it did not state new evidence or a change in circumstances, and the proposed change of order would not promote M.M.'s best interest.

The court placed M.M. in a legal guardianship with the maternal aunt. Mother appeals.

## DISCUSSION

I. *Applicable Law and Standard of Review*

Section 388 is a general provision permitting the court, "upon grounds of change of circumstance or new evidence . . . to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The statute is an "escape mechanism" that allows the dependency court to consider new information even after parental reunification efforts have been terminated. (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1316.) It permits the modification of a prior order only when the petitioner establishes by a

9

preponderance of the evidence that (1) changed circumstances or new evidence exists; and (2) the proposed change would promote the best interests of the child. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).)

A petitioner must make a prima facie showing of changed circumstances and best interests in order to obtain a hearing on a section 388 petition. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*); Cal. Rules of Court, rule 5.570(d).) While the petition must be liberally construed in favor of its sufficiency, the allegations must "describe specifically" how the petition will advance the child's best interests. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157; *Anthony W.*, at p. 250.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re R.A.* (2021) 61 Cal.App.5th 826, 837.) We review the summary denial of a section 388 petition for an abuse of discretion. (*Anthony W.*, at p. 250.)

## II.  *Analysis*

In extremely conclusory briefing, Mother recites the information in the petition and its supporting document, and contends the court erred in denying her second section 388 petition because it "made a prima facie case of changed circumstances and a showing that a hearing would promote the best interests of the child."

Mother alleged the following circumstances had changed since her reunification services were terminated: (1) she had enrolled in the Angel Step Too residential program; (2) she had

taken courses addressing "individual therapy, substance use, treatment goals and age appropriate parenting strategies"; (3) she had been consistent in her classes; (4) she continued to stay sober; (5) she continued to amend her past transgressions; (6) she was determined to do what was needed to reunite with her children and to raise them in a safe and stable home. Mother added to her description of the alleged changed circumstances the phrase, "(Last Minute Report 2/7/2022)." Mother did not mention, although the Last Minute Report did, that she had already left the Angel Step Too residential program at the time she filed her section 388 petition, and her whereabouts were unknown to DCFS.

"A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction." (*In re J.M.* (2020) 50 Cal.App.5th 833, 846.) Mother's statements did not constitute a prima facie showing of a material change in circumstances—it was, sadly, more of the same. Over the course of the dependency matter, Mother had started and then abandoned a number of programs, never making demonstrable progress on the issues that had led to the dependency proceedings. Her two and one-half months in yet another treatment program, followed by another abrupt departure, did not demonstrate that she had resolved the issues underlying the juvenile court's jurisdiction or that any change in her circumstances was of such a significant nature that it would require setting aside the order terminating reunification services. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 [change of

11

circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged prior order].)

Nor did Mother's remaining allegations establish a material change in circumstances or the resolution of the issues that led to the dependency.  Mother had previously completed a parenting class and she had repeatedly undergone stints of individual therapy and substance abuse treatment.  Her petition belied her claim of consistency in her classes, as she had already abandoned the Angel Step Too program at the time she filed her section 388 petition; moreover, regular attendance in a class for a few months falls far short of a resolution of case issues.  Mother's claimed sobriety at the time of the petition was laudable, but she previously had gone through periods of sobriety in treatment before relapsing and quitting the programs; at best, this was a changing, not a changed circumstance.  Her vague allegation that she had continued to "amend her past transgressions" lacks sufficient detail to state a material change in circumstances.  And her determination to reunify with her children was not a changed circumstance at all:  Mother had expressed this desire from the start of the dependency proceedings.  None of these allegations demonstrated a significant change of circumstances that would require setting aside the court's order or returning M.M. to her. Because Mother did not make a prima facie showing of changed circumstances, the court properly denied the petition without an evidentiary hearing.

## DISPOSITION

The order summarily denying Mother's section 388 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



GRIMES, J.



VIRAMONTES, J.