Filed 6/9/25  In re D.M. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

<table>
<tr><td>In re D.M., a Person Coming Under the Juvenile Court Law.</td><td></td></tr>
<tr><td>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>Defendant and Appellant.</td><td>F089202<br><br>(Super. Ct. No. JD145340-00)<br><br><br>**OPINION**</td></tr>
</table>

THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Carissa A. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

A.M. (mother) appeals from the juvenile court's order terminating her parental rights to her now 18-month-old daughter, D.M. (daughter), at a Welfare and Institutions Code section 366.26[1] hearing.[2] She contends the court erred by declining to apply the beneficial parent-child relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and daughter came to the attention of the Kern County Department of Human Services (department) in November 2023, when the department received a referral alleging mother tested positive for methamphetamine and THC at daughter's birth. The department took daughter into protected custody on November 9, 2023.

The department filed a petition alleging daughter was described by section 300, subdivisions (b)(1) and (j). The petition alleged daughter was at substantial risk of suffering serious physical harm due to mother's chronic homelessness, her failure to have provisions for daughter and to receive prenatal care, and her substance abuse problem. The petition further alleged daughter's two older siblings were previously neglected due to mother's substance abuse, dependency cases were opened as to each sibling in 2013 and 2015, and ultimately, mother's parental rights were terminated, and the siblings were adopted. The older siblings were living with the maternal grandmother.

Mother was not present at the initial or continued detention hearings, held on November 15 and 16, 2023. Mother was appointed counsel, and the juvenile court ordered daughter detained. Supervised visits were ordered for mother to occur twice weekly for two hours.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     There was an alleged father, but he was not located, and he did not appear during the proceedings.

*Jurisdiction and Disposition Hearings*

In its jurisdiction and disposition reports, the department recommended that the allegations of the petition be found true, mother be denied family reunification services pursuant to section 361.5, subdivision (b)(10) and (11), and a section 366.26 hearing set. Mother's parental rights to her two older children were terminated in January 2015 and April 2016.

The disposition report noted mother had been uncooperative with providing information to the department. Mother denied she was using drugs, but she did not make herself available for drug testing. While benefits and services may have been available to mother due to her status as a military veteran, she did not seek services to alleviate the need for department intervention.

Mother visited daughter on November 20 and 27, 2023. During both visits, she held daughter, told her she was beautiful and that she loved her, fed and burped her, changed her diapers, and provided hugs and kisses. The disposition report documented other visits in December 2023 and January 2024 that were supervised by a third-party provider. Mother cared for daughter during visits and was affectionate with her, but she complained about perceived injuries to daughter that were not visible to the visitation supervisor. At one visit, mother fed two-month-old daughter one-half ounce of water before the visitation supervisor intervened and advised her two-month-old babies cannot ingest water. At another visit, mother asked the visitation supervisor if she would call the cops if mother did not give daughter back. The supervisor responded that she would.

Mother failed to appear for the January 24, 2024 jurisdiction and disposition hearing. Counsel for the parties argued and submitted as to jurisdiction. The juvenile court found the petition's allegations true and continued the disposition hearing to March 18, 2024, at the request of mother's counsel.

In a supplemental report for the March hearing, the department provided an update on mother's and daughter's circumstances. The social worker met with mother after her

3.

supervised visit on January 25, 2024. Mother was not enrolled in any programs, and she refused to participate in a drug test. The report documented two visits mother had with daughter in February. Mother was affectionate with daughter and cared for her. At the end of one visit, mother stated she did not want to leave daughter with the caregiver. In February 2024, mother failed to follow through with her agreement to drug test for the department. Mother did not appear for the continued disposition hearing, but the juvenile court granted her counsel's request for an additional continuance.

A supplemental report provided additional updates concerning mother's and daughter's circumstances. During a March 5, 2024 visit, mother entered another family's visitation room while carrying daughter and had to be told to return to her visitation room. At a March 19, 2024 visit, the visitation supervisor observed mother gather daughter's belongings, place a diaper bag and purse on her arm, and stand by the room's gate. When visitation staff asked mother if she planned on going somewhere, mother stated she still had legal rights, and it was not fair they took daughter from her. Visitation staff informed mother she was not allowed to leave the building with daughter, but mother stated she should be able to leave. After visitation staff told mother to contact her social worker, mother sat down, and the visit ended without further incident.

On March 28, 2024, the social worker told mother he would submit a housing referral for mother after mother stated she was homeless. The social worker met with mother in April 2024. Mother claimed she was enrolled in an online parenting class, but she did not provide verification of her enrollment. Mother had been consistently visiting daughter, with one missed visit. While she was reportedly appropriate with daughter, as she interacted with daughter and fed, changed, and put her to sleep, visitation staff reported a couple concerns regarding mother walking into another family's visit, cursing, and attempting to leave with daughter while stating she still had rights.

Mother was not present at the May 13, 2024 continued disposition hearing. Mother's counsel objected to the department's report and recommendations. The juvenile

4.

court adjudged daughter a dependent, removed her from mother's custody, denied mother family reunification services pursuant to section 361.5, subdivision (b)(10) and (11), and set a section 366.26 hearing for September 9, 2024. The court ordered that mother's supervised visits occur every other week for two hours, but if she were incarcerated the visits were to occur monthly for one hour.

### *The Section 366.26 Hearing*

At the September 9, 2024 hearing, mother, represented by counsel, was present while incarcerated. The juvenile court found good cause to continue the hearing at the department's request so mother could be provided proper notice. Mother was ordered to be present for the October 31, 2024 continued hearing and was advised to speak to her attorney about her ability to reunify with daughter.

Mother filed a petition for an extraordinary writ, asking that the juvenile court be directed to order reunification services and visitation be provided to her. We dismissed the writ because it failed to comport with the procedural requirements of California Rules of Court, rule 8.452. (*A.M. v. Superior Court* (Nov. 22, 2024, F088613) [nonpub. opn.].)

The section 366.26 hearing was continued to January 15, 2025. In a social study prepared for that hearing, the department recommended termination of parental rights and a permanent plan of adoption. Daughter, who had been in a foster home since her detention, was placed with a non-related extended family member (NREFM) in July 2024, to best maintain familial connections. The social worker opined daughter was likely to be adopted due to her young age and personal characteristics. While the current caregivers were interested in adopting daughter, their home was only temporarily approved pending clearance of three other adults who regularly visited the home. The social worker stated that if something happened to the current placement, the department would have no problem finding another adoptable home.

The social study reviewed mother's visits with daughter. Mother participated in 41 of 58 possible visits since daughter was taken into protective custody. Overall, mother

showed routine attendance and occasionally missed visits. During visits, mother demonstrated efforts to attend to daughter's needs by feeding her, burping her, and changing her diaper, and showed appropriate affection by hugging daughter, kissing her, and telling her she loved her. Mother had a visiting relationship with daughter, who never lived with mother. The social worker opined their relationship was minimal and it would not be detrimental to terminate mother's parental rights for the purpose of adoption.

The department submitted on the social study and minor's counsel submitted on the recommendation. Mother was present at the hearing with her counsel, who stated that mother was asking the juvenile court to find the parental-benefit exception to adoption. Cindy Perry, the program administrator for the agency that supervised mother's visits, testified she observed interactions between mother and daughter. Mother appeared to show affection towards daughter, who was comfortable and playful with mother and interacted with, and responded to, mother. Perry believed daughter knew who mother was, as she would reach for mother and want to be held, and mother seemed excited that daughter wanted to be with her. Perry opined that mother was in tune with daughter's emotions, as she responded to daughter's needs. If mother needed assistance, she looked for other mothers and staff to help her. Mother played with daughter, and it appeared to Perry they were having a good time. Perry saw a physical closeness between the two, as daughter would respond when mother held her close and showed her things. When daughter became frustrated, mother would try to figure out what the baby needed. Overall, the interactions went well.

Perry had not supervised visits for the past six months and the last visit she supervised was in June 2024. Perry did not know how many visits she supervised, but of those she did, she was present during the entire visit. Perry believed she directly supervised about 10 of mother's 41 visits, but she was present for more than that.

Mother testified daughter was always very sweet and loving during visits, and daughter got excited when she saw mother. Mother changed her diaper and played with her. Mother felt daughter responded to mother's emotions. Daughter played with toys and books at the visitation center. Mother felt daughter knew who she was and she had a bond with daughter that went beyond a visiting relationship. Mother told the juvenile court that she loved the child and wanted what was best for her. Mother's last visit was in July 2024. Mother went into custody on July 29, 2024, and while she wanted visits after that, she had not had any in-custody visits, even though she left a couple messages for the social worker.

County counsel asked the juvenile court to follow the department's recommendations. County counsel argued that, assuming mother met the first prong of the beneficial parent-child relationship exception by showing regular visitation and contact, she did not meet the second or third prong. County counsel asserted loving contact was insufficient to show continuing the parent-child relationship would benefit daughter or that daughter had a substantial positive emotional attachment to mother, and given daughter's young age and need for stability, the permanency of adoption outweighed any detriment daughter would suffer if mother's parental rights were terminated.

Mother's counsel asked the juvenile court to apply the beneficial parent-child relationship exception. Mother's counsel argued the testimony and visitation accounts showed mother and daughter had a loving relationship, which demonstrated a benefit, and it would be detrimental to daughter to deprive her of that relationship. Mother's counsel asked the court not to penalize mother for her lack of visits since July 2024, because she wanted visits but was not provided them.

Minor's counsel asked the juvenile court to follow the recommendations, arguing that the number of visits was insufficient to create a parent-child bond that should not be severed, daughter did not look to mother to meet her daily needs, and daughter deserved

7.

permanency with her current caregiver.  County counsel added that there was no evidence severing daughter's relationship with mother would be harmful to daughter.

The juvenile court agreed that mother should not be penalized for the visits she did not have while in custody and found there was sufficient contact and visitation to meet the first prong of the beneficial parent-child relationship exception.  The court noted it was difficult to prove the exception where, as here, the minor is young and has never lived with the parent.  While the evidence showed mother had been loving to daughter and daughter enjoyed visits and was affectionate toward mother, there was nothing in the testimony indicating that daughter and mother had a unique or substantial bond.  The court explained it could not find the continuation of the relationship would benefit daughter or that there was a substantial, positive emotional attachment, considering daughter's age, and the facts she never lived with mother and did not react negatively when visits ended.  Finally, on the third prong, the court found the benefits of adoption outweighed the detriment of ending daughter's relationship with mother.  Accordingly, the court found mother failed to carry her burden to prove the beneficial parent-child relationship exception applied.

The juvenile court found daughter was likely to be adopted and terminated parental rights.

## DISCUSSION

Mother contends the juvenile court erred when it declined to apply the beneficial parent-child relationship exception to adoption.  She asserts she proved she regularly and consistently visited daughter, and she had a substantial, beneficial relationship with her such that daughter would be harmed if the relationship were severed.  She also asserts the court abused its discretion in finding it would not be detrimental to daughter to terminate parental rights.

8.

*The Beneficial Parent-Child Exception to Adoption*

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies.  (§ 366.26, subd. (c)(1).)  One of the statutory exceptions is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child," where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (*Id*., subd. (c)(1)(B)(i)).

A parent claiming an exception to adoption has the burden to establish by a preponderance of evidence that the exception applies.  (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.)  The parent must prove three elements to prevail under the beneficial relationship exception:  "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).)

The first element of the beneficial relationship determination asks the "straightforward" question of whether the parent visited consistently, considering the extent permitted by court orders.  (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)  The focus is on the best interest of the child as opposed to punishing or rewarding parents for good behavior in maintaining contact.  (*Ibid*.)

The second element of the exception asks whether the child would benefit from continuing the relationship.  (*Caden C.*, *supra*, 11 Cal.5th at p. 629.)  The parent-child relationship "may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' "  (*Id*. at p. 632, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)  The juvenile court's focus

9.

should again be on the child, and it "must remain mindful that rarely do '[p]arent-child relationships' conform to an entirely consistent pattern." (*Caden C.*, at p. 632.)

When considering the third element, courts must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) Potential negative effects from severance of the relationship might include "emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression." (*Ibid*.) While an adoptive home might provide a new source of stability that alleviates emotional instability and preoccupation leading to those problems, making the loss of a parent "not, at least on balance, detrimental." (*Ibid*.) Under this element, the court is again guided by the child's best interest, but in a "specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' " (*Ibid*.)

In *Caden C.*, the appellate court held "that because the parent continued to struggle with substance abuse and mental health issues and because of the risks of foster care and benefits of the potential adoptive home, no reasonable court could find the child's relationship with his parent outweighed the benefits of adoption." (*Caden C.*, *supra*, 11 Cal.5th at pp. 625–626.) Rejecting that conclusion, our Supreme Court found "[t]he Court of Appeal did not explain how the parent's struggles related to the specific elements of the statutory exception: the importance of the child's relationship with the parent or the detriment of losing that relationship." (*Id*. at p. 626.) A parent's struggles with issues that led to dependency were determined to be relevant only to the extent they inform whether the child would "benefit from continuing the relationship and be harmed, on balance, by losing it." (*Id*. at p. 638.)

***Standard of Review***

Appellate courts review a juvenile court's ruling on the application of the beneficial parent-child relationship exception using a " 'hybrid' " standard. (*Caden C.*,

*supra*, 11 Cal.5th at p. 639.)  The substantial evidence standard applies to the first two elements of regular visitation and existence of a beneficial relationship.  (*Id*. at pp. 639–640.)  The court's decision as to the third element—whether termination of parental rights would be detrimental to the child—is reviewed for abuse of discretion.  (*Id*. at p. 640.)  "Review for abuse of discretion is subtly different, focused not primarily on the evidence but the application of a legal standard.  A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Id*. at p. 641.)

Where, as here, the juvenile court determined the parent did not meet his or her burden to prove an exception to termination of parental rights, the standard of review is "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)  Specifically, the question is "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*I.W.*, at p. 1528.)

### *Analysis*

While mother satisfied the first prong by consistently visiting daughter, she fails to identify any evidence that would compel a finding on the second prong, namely, that daughter had a substantial, positive emotional attachment to her that would imply daughter would benefit from continuing their relationship.  Daughter was detained from mother's custody at birth and spent her entire life outside of mother's care.  At the time of the permanency planning hearing, then 14-month-old daughter had been living with the NREFM for nearly six months after being in a foster home for eight months.

Mother cites to evidence that she had positive and affectionate interactions with daughter during visits.  She asserts the evidence showed daughter enjoyed her time with mother and loved her, and the visitation supervisor's testimony showed daughter

11.

benefited from mother's love, adoration, and affection.  However, a parent must do more than exhibit "loving and frequent contact" (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418) or show that the parent and child mutually enjoy their visits.  (*In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324.)  "A biological parent … may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.  [Citation.]  A child[, especially a young child,] … should not be deprived of an adoptive parent [where, as here,] the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent."  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

While the visitation supervisor and mother testified about mother's positive visits and daughter's affection toward mother and that she looked to mother during visits, neither witness provided evidence of a substantial bond between daughter and mother. There was no evidence that daughter had difficulty separating from mother or experienced distress when visits ended.  Simply put, the evidence did not compel the juvenile court to find daughter and mother had a beneficial relationship within the meaning of the statute.[3]

---

[3]     Mother likens the facts of her case to those in *In re A.L.* (2022) 73 Cal.App.5th 1131, where the appellate court found substantial evidence supported the juvenile court's express finding that the father met his burden to show a substantial, positive emotional attachment between the child and the father.  But in *A.L.*, at the time of removal, the child was three years old and lived with the father, who had been the child's sole provider and caretaker.  (*Id*. at pp. 1137, 1139, 1148.)  The child was old enough to tell the social worker how she felt about her living situation.  (See *id*. at pp. 1141–1142.)  There was evidence the child "looked forward to" the visits with the father and was "very attached" to him.  (*Id*. at pp. 1144, 1148.)

By contrast here, daughter had lived out of mother's care since she was 10 days old.  While there is evidence daughter enjoyed her time with mother during supervised visits, there is no evidence she "looked forward to" the visits or that she had any attachment to mother outside the limited time spent in the supervised visits.

Even if we were to assume mother met the second prong, we cannot say the juvenile court abused its discretion by determining any benefit daughter derived from her relationship with mother was outweighed by the benefit she would receive through the permanency and stability of adoption. The court found the benefits of adoption and remaining in the home daughter had known for "pretty much her whole life," which provided her with stability and security, outweighed the detriment of ending her relationship with mother. The evidence shows daughter was adoptable, a finding mother does not challenge, and adoption would provide her with permanency and stability. Given that daughter's relationship with mother was merely a friendly, loving visitation one, the court reasonably could find the benefit of adoption outweighed any benefit daughter may derive from continuing her relationship with mother.

Mother challenges the finding that daughter's placement was stable, citing to the evidence that daughter's care provider was only temporarily approved pending clearance of three adults who visited the home regularly. The social worker, however, opined that if something happened with daughter's current placement, she was likely to be adopted due to her young age and the absence of any mental health conditions, developmental or behavioral issues, or medical conditions. Thus, the court could find that daughter still would benefit from the permanency and stability of adoption even if she were not adopted by her current care provider.

Mother's relationship with daughter was simply not that extraordinary case where preservation of parental rights outweighs the preference for adoption. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1166.)[4] Mother did not present any evidence that daughter would

---

[4] We do not see *In re E.T.* (2018) 31 Cal.App.5th 68, cited by mother, as analogous to the instant action. In *E.T.*, the appellate court reversed the juvenile court's order declining to apply the beneficial parent-child relationship exception. There, when the children were separated from their mother, they demonstrated anxiety, uncertainty, and fear. (*E.T.*, at p. 72.) During visits, the children at times expressed a wish to visit longer with her or visit her home. (*Ibid.*) The social worker testified the mother provided the

13.

miss visits with mother or that she would be harmed if her relationship with mother ended. Mother had the burden of proving the applicability of the beneficial parent-child relationship exception but presented almost no evidence that terminating her relationship with daughter, however positive that relationship might be, would be detrimental to daughter.

While it is undoubtedly difficult for any 14-month-old to express emotional attachment and desires, and it appears daughter may have enjoyed the visits, the evidence mother presented did not show that ending the visits would cause daughter any detriment. (Cf. *In re D.M.* (2021) 71 Cal.App.5th 261, 271 [children had lived with their father for two to eight years, wanted to return to him, and cried when visits concluded]; *In re J.D.* (2021) 70 Cal.App.5th 833, 857–858 [child frequently expressed a desire to go to his mother's house, told her he loved her, and sought her attention during visits].)

Indeed, mother's counsel, in arguing for the beneficial parent-child relationship exception, merely stated her opinion that "[i]t would be a detriment to [daughter]," if she were deprived of the "loving relationship" she had with mother. There was no evidence, for example, that the effects of severing daughter's relationship with mother "might include emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) Nor

---

children with comfort and affection and addressed their fears and anxiety, and that both the mother and the foster parents provided consistency in the children's lives. (*Ibid*.) The child welfare worker testified that following visits, the children were sad and withdrawn and sometimes would act out, but that some of their behavior may have been due to separation from the mother. (*Id*. at p. 73.) The juvenile court found the children were " 'very tied to their mother.' " (*Id*. at p. 75.)

In contrast here, mother presented no evidence to show what detriment daughter would suffer if the parent-child relationship were terminated. Daughter did not show serious behavioral issues connected to being away from mother, even when she had no contact with her. Daughter did not have special needs that required particularized comfort from mother.

was there evidence of how losing that relationship would affect daughter or what daughter's life would be like without mother in it, other than counsel's argument that it would be detrimental to daughter if she were deprived of her relationship with mother.

We have no doubt that mother loves daughter or that their visits were positive and enjoyable. However, "[a] ' "showing [that] the child would derive *some* benefit from continuing a relationship maintained during periods of visitation" ' is not a sufficient ground to depart from the statutory preference for adoption." (*In re Andrew M.* (2024) 102 Cal.App.5th 803, 818, quoting *In re G.H.* (2022) 84 Cal.App.5th 15, 25.) Under these circumstances, the juvenile court's ruling is entitled to a presumption of correctness, and remand is unwarranted. (*Caden C.*, *supra*, 11 Cal.5th at p. 640.) Therefore, the court did not err in declining to apply the beneficial parent-child relationship exception, and its order terminating mother's parental rights was proper.

## DISPOSITION

The juvenile court's January 15, 2025 order terminating parental rights is affirmed.